## MINER N. KNOWLTON

### *v.*

## JULIA KNOWLTON.

*Filed at Ottawa January 15, 1895.*

1. NOTICE—*publication "for two successive weeks" before term—what is.* Publication once in each of two successive weeks complies with an order that notice of a divorce action be given by publishing a copy "for two successive weeks before the term of court to which the same is made returnable," and it is not essential that the full period of two weeks elapse before the first publication and the commencement of the term.

2. DOMICIL—*residence not lost by absence in naval service.* The residence of one's origin is not lost, for the purpose of a petition for divorce, by reason of special duties out of the State, in the naval service, during a portion of the necessary time, even though during part of the time the petitioner kept house with his wife in another State.

3. DECREES—*of court of another State—impeaching for fraud.* A decree of divorce granted in another State will not be held void on the ground that the court was deceived as to the existence of jurisdictional facts, where the evidence by which the fraud is attempted to be shown is conflicting and unsatisfactory.

*Knowlton* v. *Knowlton,* 51 Ill. App. 71, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

B. M. MUNN, for appellant.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is a suit for separate maintenance, brought by Julia Knowlton, the appellee, against Miner N. Knowlton, the appellant. The latter sets up, by way of defense, that he was divorced from appellee on October 26, 1869, in the State of Connecticut. The parties were married at Brooklyn, in the State of New York, on September 18, 1866, and on the 4th day of October, 1869, appellant filed in the Superior Court of Fairfield county, Connecticut, his petition for a divorce from appellee, charging her with adultery. The petition alleged that appellee was then "in parts unknown," and it is not contended that there was any personal service upon her, but an attempt was made to bring her into court by constructive service.

The statute of Connecticut in force at the time that the decree was rendered was as follows: "On all petitions for a divorce where the adverse party resides out of or is absent from the State, either judge of the Supreme Court of Errors or of the Superior Court, or any clerk of said courts, or any county commissioner, may, in vacation, make such order relative to the notice to be given to the adverse party as he shall deem reasonable, and such notice having been given and duly proved to the court, said court may proceed to the hearing of said peti-

tion at the first term, or may direct such further notice to be given as said court shall deem proper." Rev. Stat. of Conn. 1866, sec. 34, chap. 3, title 13, p. 306.

The exemplified copy of the divorce proceedings in the Connecticut court shows the petition for divorce, the order of notice, the officer's return and the judgment and decree in the case of *Miner N. Knowlton* v. *Julia Knowlton.* The order of notice is as follows:

"*Superior Court of Fairfield County.—October term, 1869.*

MINER N. KNOWLTON  
      *vs.*             Petition for Divorce.  
JULIA KNOWLTON

"Whereas, it has been shown to me that Julia Knowlton, the above named respondent, does not reside in this State, but is in parts unknown to the petitioner, it is ordered that notice be given to the respondent of the pendency of this petition by publishing a true and attested copy of this order in the *Stamford Advocate*, a newspaper published in Stamford, in said county, for two weeks successively before the term of the court to which the same is made returnable, by some proper officer or indifferent person.

"Dated, Bridgeport, October 6, 1869.

HENRY T. BLAKE,  
*Clerk of Sup. Court for Fairfield Co.*"

The officer's return to the order of notice is as follows:

FAIRFIELD COUNTY,  
    *Greenwich.*        *ss.*     The 7th day of October, A. D. 1869, there by virtue hereof to me directed, I caused a true and attested copy of the foregoing order to be published in the *Stamford Advocate*, a newspaper published in Stamford, in said county, for two weeks successively before the term of the court to which this petition and order of notice is made returnable.

*Attest:* JOHN DAYTON,  
*Constable of Greenwich.*"

The petition for divorce is addressed as follows: "To the Hon. Superior Court to be held at Danbury, in and for Fairfield county, on the third Tuesday of October, A. D. 1869."

A court of general jurisdiction, acting within the scope of its authority, is presumed to have jurisdiction to render the judgment or decree it pronounces, until the contrary appears. Here, the decree of divorce contains a finding that "said petition has been duly served on the respondent." This finding is to be considered in connection with and as referring to the order of notice by publication, and the officer's return in relation thereto, as they appear in the record. *Hemmer* v. *Wolfer*, 124 Ill. 435; *Settlemier* v. *Sullivan*, 97 U. S. 444.

The Connecticut statute gave the judge, or clerk, or county commissioner, power to make, in vacation, such order relative to notice in divorce suits to any defendant who resided out of or was absent from the State, as he should deem reasonable. In the case under investigation the clerk's order required that notice should be given to the respondent of the pendency of the petition by publishing a true and attested copy of the order in a designated newspaper "for two weeks successively before the term of the court to which the same is made returnable." The divorce was decreed at the October term, 1869, to-wit, on October 26, 1869. The first day of the October, 1869, term of the court was the third Tuesday of October, 1869, —that is to say, the 19th day of October, 1869. The order for notice by publication was made on October 6, 1869, and the return of the officer shows that he did not cause publication to be made in the designated newspaper until October 7, 1869.

The circuit court of Cook county, in rendering a decree in the case at bar in favor of appellee and against appellant for separate maintenance, seems to have proceeded upon the theory that it was not possible to publish the order of notice in a newspaper "for two weeks

successively" between the 6th and 19th days of October, 1869; that therefore appellee was not brought into the Connecticut court by publication in accordance with the provisions of the Connecticut statute, and with the terms of the order made in pursuance thereof, and that it follows that the decree of divorce is void as to her, for want of jurisdiction over her person.   We do not concur in this view of the matter.   The order did not, in terms, require that two full weeks should intervene between the first publication of the notice and the first day of the term of the court.   The words of the order were, "for two weeks successively before the term of the court."   The order is probably susceptible of either of two constructions : the one demanding the lapse of two full weeks, as above indicated, the other only calling for publication once in each of two successive weeks, provided such publications are both prior to the term of the court.   This latter was manifestly the construction placed upon the order by the Connecticut court, since it incorporated in its decree the following finding :   "This court finds that said petition has been duly served on the respondent."   And this construction is in consonance with the rulings in this State.   In *Madden* v. *Cooper*, 47 Ill. 359, the notice was published three successive times in a weekly newspaper, the first publication being on March 16, the second on March 23, and the last on March 30, and it was held that this was compliance with a statute which required three weeks' notice in a newspaper.   In *Pearson* v. *Bradley*, 48 Ill. 250, the statute required notice "to be published for three successive weeks, once in each week, in a newspaper," and it was held that it was not intended to require notice of sale to be published for three full weeks, from the first publication to the day of sale, but simply to secure three successive weekly publications of such notice.   And see, also, *Andrews* v. *People ex rel.* 84 Ill. 28, and *Garrett* v. *Moss*, 20 id. 549.

A further attack is made by the pleadings and evidence upon the decree of divorce, upon the alleged ground that the representations of appellant to the Connecticut court were false as to jurisdictional facts, and that said court was deceived and misled to assume a jurisdiction it did not have, by his false and fraudulent statements. There are two specifications of fraud in that regard. It seems that the statute of Connecticut required, as a condition precedent to obtaining a divorce in its courts, that appellant should allege and show that he had been a resident of that State for more than three years last past and prior to the filing of the petition. The petition in question contains this averment: "And your petitioner further shows that he has resided in this State for more than three years last past." The decree of the court contains the recital that "the allegations in said petition having been proved, are found true."

It appears, from the evidence, that appellant was born and brought up at Stanwich, town of Greenwich, Fairfield county, Connecticut, and that he entered the naval service of the United States from there, in 1862, as a third assistant engineer. Also, that his father's family continued to reside there, that he was there himself when not on duty, and that all his property was there. Also, that in 1866 he was a second assistant engineer, and was on special duty in Brooklyn, New York, inspecting and testing steam machinery. There, at his boarding house, he met appellee, and after a month's acquaintance married her on September 18, 1866. Immediately after the marriage they went to his father's house at Stanwich, and upon their return to Brooklyn boarded for a few months, and then moved into a flat and went to housekeeping. In the latter part of December he was ordered to join the ship "Iroquois," and in January, 1867, he sailed on her for China. He left his wife keeping house in the flat, with servants, and made her an allotment of $50 a month out of his pay. He testifies that when he went

to sea, the understanding and agreement were that she should dispose of the furniture in the flat and go to Stanwich and board with his father. This, however, she did not do. In eighteen months or more he returned from his cruise and at once went to Stanwich. He did not find his wife there, and she had not been there, but she had, during his absence, been delivered of a child, which she had sent, in charge of a nurse, to his father's house, and he found the child there when he came back from China. It does not appear when appellee left the flat in which she was living at the time of appellant's departure on the "Iroquois," but the evidence shows that from some time in 1868 until December, 1869, she lived in apartments on Huntington street, Brooklyn, rented from a lady friend named Brown. In the meantime appellant had been on a cruise to the West Indies, from which he returned about the last of July, 1869, and again went to Stanwich, where his child was being brought up, and he was paying five dollars a week to his folks for taking care of it.

From the evidence in the record we are unable to say that in October, 1869, appellant was not a resident of Stanwich, Connecticut, or to say that he had not been such for more than three years then last past. We do not understand that, either by reason of his being in the naval service of the government or by virtue of his being detailed to special official duty at Brooklyn, even though for a portion of the time he was located with his wife in a flat instead of in a boarding house, he lost his residence at his domicil of origin.

A further claim is made, that the order of publication of notice and the decree of divorce were obtained by the false and fraudulent statement of appellant that appellee was then in parts unknown to him, when, in fact, her residence was in Brooklyn, New York, and well known to him to be there. If the testimony of appellant is to be relied on, he made diligent search, prior to the divorce suit, to ascertain the whereabouts of his wife, but was

unable to find out where she was, and thought it likely that she had carried out her written threat of March 20, 1869, to follow him to the West Indies unless he responded to her demand for money. Be this as it may, the evidence on this branch of the case is entirely too conflicting and unsatisfactory to justify a judicial decision that the decree of the court in Connecticut is void, as having been obtained by fraud, whereby that court was given a merely colorable and not real jurisdiction of the person of appellee. This case, in that regard, falls very far short of the case made in *Caswell* v. *Caswell,'* 120 Ill. 377.

It is provided in the Federal constitution that full faith and credit shall be given in each State to the public acts, records and judicial proceedings in every other State. In view of this provision the judgment or decree of a court of general jurisdiction in a sister State should not be held void on the ground that such court was deceived and misled as to the existence of jurisdictional facts, and assumed to exercise jurisdiction when it had no right to do so, unless the evidence is of such satisfactory character as to exclude any other reasonable conclusion.

We think the decree of divorce rendered by the Superior Court of Fairfield county, Connecticut, must be regarded as a valid decree, and as entitled to full credit and effect as such, and that it is a complete bar to appellee's claim for separate maintenance. This view of the case obviates any necessity for considering other questions that are discussed by counsel.

The judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause remanded to the latter court with directions to dismiss the bill at the cost of the complainant.

*Reversed and remanded.*