(No. 26010.—

THE PEOPLE *ex rel.* Ethel M. Noonan, Appellant, *vs.* JOHN LEONARD WINGATE *et al.* Appellees.

*Opinion filed April 10, 1941.*

JOSEPH A. HINES, FEIRICH & FEIRICH, and BAKER, LESEMANN, KAGY & WAGNER, for appellant.

JOHN H. CARTER, and R. WALLACE KARRAKER, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

In a *habeas corpus* action in the circuit court of Union county, Paula Noonan, an infant, was remanded to the custody of appellees John Leonard Wingate and Mary DeWolf Wingate. Ethel M. Noonan, petitioner-appellant, appealed direct to this court, a constitutional question being involved.

Paula Noonan was the daughter of Paul Noonan and Ruth Wingate Noonan. When they were married in 1935 their domicile was Middlesex county, Massachusetts. Immediately after their marriage they established a home in the city of Waltham in that county. In 1937, he entered the employment of a fire insurance company, working in and about that city. Later he was transferred to Philadelphia, Pennsylvania, and he and his wife moved their household effects to that city and began housekeeping. In a few months his work was completed there and they returned to Waltham. He worked in the Boston office of his employer a short time and then was transferred to Springfield, Massachusetts. They started housekeeping in that city and after remaining there about a year returned to Waltham. In a few days he was transferred to Atlanta, Georgia. They arrived in Atlanta in the early part of June, 1939, and their household effects were sent later. They lived at a hotel a few days, when Mrs. Noonan became ill and was taken to a hospital. Paula was born at the hospital June 20, and her mother died June 29. In

July, Paul Noonan completed arrangements with appellees, who lived in Anna, Illinois, to care for his child, and the latter part of the month he delivered Paula to them. Paul Noonan returned to his employment at Atlanta, Georgia. The duties of his employment took him into several States but Atlanta continued as his headquarters. He never established a home in Georgia. While traveling in Virginia he received injuries from which he died October 29, 1939. Between the date of the child's arrival in Anna and Paul's death he made two trips to Anna to see his child. He paid appellees for their services and, in addition, furnished her clothing.

Appellant is the paternal grandmother of Paula and is domiciled in Waltham, Middlesex county, Massachusetts. Appellees are husband and wife, and have their domicile in Illinois, residing in Anna. John Leonard Wingate is the maternal uncle of Paula. Other near relatives of the child are James Francis Noonan, the husband of appellant, a brother and two sisters of Paul Noonan, all of whom are adults and reside in Waltham, Massachusetts. Her maternal grandmother and a maternal aunt reside in Waltham. Another maternal aunt resides in New York City.

November 27, 1939, appellant petitioned the probate court of Middlesex county, Massachusetts, to appoint her or some other suitable person as guardian of Paula Noonan. It was alleged in the petition that Paula was in Anna, Union county, Illinois, and had property in Middlesex county. The amount of the property was not stated, but in a certificate attached to her bond, appellant stated on information and belief that Paula owned no real estate but had personal estate estimated at $500. The probate court granted the prayer of the petition and appointed appellant as guardian of the person and estate. A bond in the sum of $1000 was filed and letters of guardianship issued November 25, 1939.

Appellant's petition in this action is in her individual capacity and as guardian of the estate and person of Paula

Noonan. She claims the right of possession (a) by force of her appointment as guardian of the person in Massachusetts, (b) because she is the natural guardian, and (c) that the best interests of the child require she be placed in her possession. No question of fact is raised as to the moral fitness of any of the parties. No complaint is made as to the care and attention the child is receiving from appellees and no claim is made that the care and attention appellant would give the child, if it were in her custody, would not be such as a child of tender years should receive. Appellant desires possession of the child that she may take her into her own home in Massachusetts.

Appellant contends the order of the probate court of Massachusetts appointing her guardian of the person is entitled to full faith and credit under section 1 of article 4 of the Federal constitution.

The petition filed by appellant in the probate court in Massachusetts stated the child was then at Anna, in this State. No reference was made to the fact she was then in the possession of appellees. Unquestionably, the probate court of Massachusetts had jurisdiction to appoint a guardian of the estate of Paula Noonan based on the allegation that the infant had property in that jurisdiction, but in making the appointment of a guardian of the person the probate court had to determine whether it was for the best interests of the child that she be placed in the possession of such guardian. The child being out of the jurisdiction of the court, and the ones who then had possession of her not being before the court, it is obvious that the scope of that inquiry would be limited to a determination of the fitness of the person to be appointed as guardian and would not involve a consideration of whether the child was then receiving better care and attention in the possession of appellees than she would in the possession of such guardian. In all cases where the custody of a minor is involved, the courts are in accord that the best interests

of the child is the primary consideration. This consideration may even go to the extent of supplanting the right of a parent to the custody of the child. The probate court of Massachusetts, having been thus limited in its scope of inquiry, it can not be said that mere proof of the order of appointment of a guardian of the person by that court requires this court to deliver her into the possession of appellant as such guardian without a full consideration of the evidence to determine what is best for the child.

Decrees entered in divorce actions disposing of the custody of a child then outside the jurisdiction of the State where the decree is entered are generally held not to be entitled to full faith and credit in a proceeding involving the child's custody in an action begun in a State other than where the decree was entered. *Kline* v. *Kline,* 57 Iowa, 386, 10 N. W. 825; *Rodgers* v. *Rodgers,* 56 Kan. 483, 43 Pac. 779; *Seeley* v. *Seeley,* 30 App. D. C. 191, 12 Ann. Cas. 1058; *Weber* v. *Redding,* 163 N. E. (Ind.) 269; *Harris* v. *Harris,* 115 N. C. 587, 20 S. E. 187.

In Cooley's Constitutional Limitations, fourth edition, page 499, in discussing the jurisdiction of a court in a divorce action where the defendant was a non-resident and service was by publication it is said: "The publication which is permitted by the statute is sufficient to justify a decree in these cases changing the *status* of the complaining party, and thereby terminating the marriage; and it might be sufficient also to empower the court to pass upon the question of the custody and control of the children of the marriage, if they were then within its jurisdiction. But a decree on this subject could only be absolutely binding on the parties while the children remained within the jurisdiction; if they acquire a domicile in another State or country, the judicial tribunals of that State or country would have authority to determine the question of their guardianship there." The principles announced in the cases cited are applicable here.

It is also contended that the domicile of the child has a controlling effect on appellant's rights as guardian and, related to this, is the contention that comity between States requires this court to recognize the guardianship appointment.

The evidence shows that the father of the child was, prior to going to Atlanta, domiciled in Massachusetts. Appellees claim that the evidence shows his going to Atlanta was under such circumstances as to indicate an intention on his part of making Atlanta his permanent home. The evidence will not bear such construction. The character and nature of his employment, his returning to Middlesex county when his work was completed at Philadelphia and Springfield, together with the circumstances under which he went to Atlanta, leads to the conclusion that he considered his stay in Atlanta to be temporary and that upon completion of his work there he would return to Massachusetts. Under such conditions Massachusetts continued to be his domicile to the date of his death. *Hayes* v. *Hayes,* 74 Ill. 312; *Holt* v. *Hendee,* 248 id. 288; *Olivieri* v. *Atkinson,* 168 Mass. 28, 46 N. E. 422.

At common law the father was the natural guardian of his minor child and because of this his domicile was the domicile of the child. At the death of the father an infant took the domicile of its mother and on the death of both parents, the domicile of the child continued to be, during its minority, that of its last surviving parent. A child could not, of its own volition, change its domicile. *Lamar* v. *Micou,* 112 U. S. 452, 5 Sup. Ct. 221, 28 L. ed. 751; *Van Matre* v. *Sankey,* 148 Ill. 536; *Holyoke* v. *Haskins,* 5 Pick (Mass.) 20.

Appellees came into possession of the child pursuant to an arrangement between them and Paul Noonan, whereby they were to receive compensation for their services in caring for her. His regular letters of inquiry and his trips to visit the child refute every thought that he ever intended

to relinquish his paternal rights in the child or do anything that would give her a domicile different from that of his. The fact that Paul Noonan placed his daughter in the home of appellees in a jurisdiction other than where he was domiciled would not have the effect of establishing a domicile for the child separate and apart from that of the father. *Lamar* v. *Micou, supra; Nunn* v. *Robertson,* 80 Ark. 350.

The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the child. It arises out of the power that every sovereignty possesses as *parens patriae* to every child within its borders to determine its *status* and the custody that will best meet its needs and wants. (*Woodworth* v. *Spring,* 4 Allen, 321; *White* v. *White,* 77 N. H. 26, 86 Atl. 353; *Hanrahan* v. *Sears,* 72 id. 71, 54 Atl. 702.) The residence within the State suffices even though the domicile may be in another jurisdiction. *Finlay* v. *Finlay,* 240 N. Y. 429; 148 N. E. 624.

In *Woodworth* v. *Spring, supra,* a child whose parents were both deceased was domiciled in Illinois. A guardian was appointed by the courts of Illinois. With the consent of the Illinois guardian the child was taken temporarily to Massachusetts. A guardian was appointed in Massachusetts. Later, the Illinois guardian sought, by *habeas corpus* action, to regain possession of the child for the purpose of returning him to Illinois. In discussing the weight and credit the Massachusetts courts should give to the guardianship appointment in Illinois the court said: "Effect may be given by way of comity to such laws by the judicial tribunals of other States and countries; but, *ex proprio vigore,* they can not have any extra-territorial force or operation. The question whether a person within the jurisdiction of a State can be removed therefrom depends, not on the laws of the place whence he came or in which he may have his legal domicile, but on his rights and obligations as they are fixed and determined by the laws of the State or country in which he is found. * * * The comity of a State will

give no effect to foreign laws which are inconsistent with or repugnant to its own policy, or prejudicial to the rights and interests of those who are within its jurisdiction. Even the parental relation, which is everywhere recognized, will not be deemed to carry with it any authority or control beyond that which is conferred by the laws of the country where it is exerted. The *patria potestas* of a foreign parent over his child is not that which is vested in him by the laws of the place of his domicile but that which exists by virtue of the parental relation in the country where the father seeks to enforce his authority. * * * Every nation has an exclusive right to regulate persons and property within its jurisdiction according to its own laws, and the principles of public policy on which its own government is founded. It results from these principles, that persons exercising offices and trusts with which they are clothed by virtue of the laws of a particular State or country can not undertake to transfer their power or capacity to act, so as to control persons or property situated beyond the limits of the jurisdiction of the government or sovereignty from which their authority is derived. An administrator appointed under the laws of a foreign State can not act as such in this commonwealth. Nor, for like reasons, can a guardian appointed by virtue of the statutes of another State exercise any authority here over the person or property of his ward. His rights and powers are strictly local, and circumscribed by the jurisdiction of the government which clothed him with the office."

Even though the jurisdiction of the probate court of Massachusetts be conceded, the order entered appointing a guardian of the person would not be considered binding in the courts of that State or any other State where the child might be found if it appeared that, subsequent to such appointment, there had been a change of circumstances materially affecting the best interests of the child. (*People* v. *Schaedel,* 340 Ill. 560; *Sheehy* v. *Sheehy,* 186 Atl. (N. H.) 1.) The rule is firmly established in this State that in ques-

tions of custody the primary consideration is the present and prospective welfare of the child. *Mahon v. People,* 218 Ill. 171; *Umlauf v. Umlauf,* 128 id. 378; *Petition of Smith,* 13 id. 138.

The order of the probate court of Middlesex county, Massachusetts, appointing appellant as guardian can not, under the principles announced, be given full faith and credit, nor does comity require the courts of this State to consider the order of the probate court of Massachusetts to be a bar to an exercise of the judicial power of the courts of this State to determine the *status* of this child and what is for its best interests. The fact of the appointment was admissible in evidence to be considered as one of the circumstances in the case, but can not be given the controlling effect claimed by appellant.

Appellant's right to custody as the natural guardian of the child is subject to the exercise of the judicial power of the court to determine what is to the best interests of the child. In determining such question this court can not be unmindful of the decision the father of the child made after her mother's death. The evidence shows that immediately after the mother died various relatives, including appellant, made suggestions as to the disposition of the child, some of them offering to take and care for her. After days of consideration, he selected appellees. It is true that he may have deemed their selection as temporary, but during the period in which he was permitted to observe the care they were giving the child he wrote several letters in which he expressed satisfaction with the selection he had made and the care they were bestowing on his daughter. There is nothing in the evidence that would warrant the court in finding that it is to the child's best interest that it be taken from appellees and given into possession of the appellant.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*