Owego Community Consolidated School District No. 434, Bert Ransdell, Edwin Holzhauer, Sr., Evelyn Holzhauer, John L. Prisk, Roger Harding, Mildred Harding, Ordella Abraham, and Ernest Abraham, Plaintiffs-Appellants, v. Lucile Goodrich, Livingston County, Illinois, Superintendent of Schools, et al., Defendants-Appellees.

Gen. No. 11,395.

Second District, Second Division.
September 1, 1960.
Rehearing denied February 15, 1961.

Fellheimer and Vicars, of Pontiac, and Irving Goodman, of Chicago, for appellants.

Sidney E. Smith, of Pontiac, and Berry and O'Conor, of Streator, for appellees.

WRIGHT, J.

This case originated by the defendants, hereinafter referred to as the appellees, petitioning the Superintendent of Schools of Livingston County, Illinois, to call an election to vote for or against the establishment of a community unit school district by virtue of Section 8–9, Chapter 122, Ill. Rev. Stat., 1957. The Superintendent of Schools, after a hearing, ordered the election and the plaintiffs, hereinafter referred to as the appellants, appealed this order to the Circuit Court of Livingston County under the Administrative Review

Act. The Circuit Court entered an order affirming the Superintendent's decision from which order this present appeal is taken.

It is the contention of the appellants that the proposed unit school district did not have a "population" of 1500 persons as required by the applicable section of the Illinois School Code on the date of the filing of petition, February 17, 1958, and that a population of 1500 or more is a jurisdictional prerequisite to the calling of an election to vote on the formation of a community unit school district. Appellants herein have stated that they confine this appeal to the sole issue of whether or not the unit school district had a population of 1500 on the day of the filing of the petition. If the population was less than 1500 then the Superintendent of Schools had no authority to call an election and the Circuit Court erred in affirming her order. If the population was 1500 or more, the Superintendent of Schools was authorized to call an election and the Circuit Court's order of affirmance is correct and proper.

It is the theory of the appellants that the rules laid down by the United States Census Bureau in its Enumerators Reference Manual, 1950 Census of the United States, are controlling and by applying the criterion therein promulgated, the proposed school district had less than 1500 population. The appellees urge that any person who had its permanent residence or domicile in the district is to be included in the population within the meaning of the School Code even though such person may be temporarily out of the district in military service, in employment, in college or for some other purpose.

A short time before the filing of the petition, a census was taken in the proposed community unit school district by an individual or individuals and this private census revealed that there were 1541 people in

411

the district. The order of the Circuit Court recites that 1463 persons admittedly were inhabitants of the district, thus, there were 78 persons who are disputed as being inhabitants of the district. The trial court in its final order found that 36 of the 78 disputed persons were not part of the population. There is no cross appeal as to the determination that 36 of these individuals were not part of the population and, therefore, these persons will not be considered in this opinion. The trial court found that 39 of the disputed persons were part of the population and as to the other three persons the court stated in its order that it was unnecessary to make a determination since it had already found that the population of the district was 1502. The appellants have waived by their own admission their objections to six individuals reducing the disputed number to 30.

The appellants contend that 30 persons should not have been included in the private census for the purpose of determining population within the meaning of the School Code. We will now turn our attention to a consideration of these 30 persons.

Nine of the persons in question were in the military service of the United States, single and admittedly were physically stationed and living outside the school district, although their permanent address was that of their parents who resided in the district.

Three of the persons in question were Mr. and Mrs. Marshall Sancken and minor son. Mr. Sancken was in the military service of the United States but had been discharged two days prior to the filing of the petition and was enroute to his home in the district with his family on the date the petition was filed. Mr. and Mrs Sancken were registered to vote in the district.

The next group of persons objected to included nine individuals who were students attending college and

nurses in training in hospitals located outside the district. These nine lived at the colleges and hospitals where they were attending school and taking nurses training, but their parents with whom they lived before going to college or to taking nurses training resided in the district. All except one were single and all were physically living at or near their respective schools and hospitals outside the district.

Three persons objected to are Nellie Shutz, Barbara Gerdes and Dillard Ross. Nellie Shutz, due to her inability to care for herself, was a patient in a nursing home outside the district; had sold her home in the district and had been for sometime living with various relatives and in various nursing homes, both in and out of the district. She was registered to vote in the district. Barbara Gerdes, a minor, about twelve years of age, was a patient in Lincoln Hospital, Lincoln, Illinois. She was single and had lived with her parents in the district prior to entering the hospital. Dillard Ross was an inmate in the Livingston County Home, a county supported home, and had been since November, 1957. He had a home within the district, had lived there prior to becoming a patient at the Lincoln County Home, and was registered to vote in the district.

The last group objected to were six persons who worked full time at places of employment outside the district. They lived and slept in towns of their employment during the work week, although each of them were single and had parents residing in the district and each of them returned to their parents home during weekends, holidays and vacations.

 Appellants state that there is no approved method for taking a census of the population of a school district in Illinois but, contend that the criteria for determining population under the federal census methods should be controlling and adopted by this court. For the purpose of clarity it might be stated

413

that no official census by the United States Census Bureau was ever taken in the proposed school district, but the argument is made that United States Census Bureau Rules and Regulations should apply when a private census is taken for the purpose of determining "population" within the meaning of the Illinois School Code. Appellants stand on the federal census rules and regulations as support for their position that the proposed district did not have 1500 or more population. Appellants had previously requested leave of this court to file as an appendix to their brief a copy of the Enumerators Reference Manual, 1950 Census of the United States, United States Department of Commerce, Bureau of Census, which was denied. However, they have quoted extensively in their brief various provisions thereof which are not denied and for the purpose of this opinion we are taking judicial notice of same.

Without quoting, reciting the language at length or stating various exceptions, it might be stated generally that the Enumerators Reference Manual provides the following regulations to govern the census takers in computing population. The census taker is told therein to not enumerate solders, sailors, marines and airmen in their home town when they are stationed elsewhere. As to college students, they are to be enumerated in the area they live while attending college and not at their home address. Student nurses are enumerated as residents of the hospital, nurses' home or other place where they live while taking their training. Inmates of prisons, asylums and institutions other than general hospitals are enumerated as inmates of such institutions and not at their home address. Persons who work away from home and sleep most of the week in one locality at their place of employment are to be enumerated in the city of their employment and not at their permanent home address.

414

■ Our state legislature has recognized and accepted the federal census for certain purposes such as determination of the population of a city, for determining the dissolution of a city or village, and by implication for the basis of salaries of certain employees of counties of the several counties of this state. However, there has been no state legislation that the federal census rules apply in ascertaining the population of a school district or a proposed unit school district in Illinois. If "population" as used in the Illinois School Code is to be determined by the methods prescribed by the United States Census Bureau in ascertaining population, then this would be within the province of our state legislature. It is not the function of this court but for the legislature to establish, if necessary, a new criteria for determining population as used in the School Code, and we do not intend to usurp the power of the legislature in this respect. The primary purpose of the federal census is to determine the population of the United States, the several states and the cities, towns and villages therein. The rules and regulations promulgated by the census bureau for the guidance of the respective enumerators might be said to be rules of convenience and necessity. Certain rules and regulations must be necessarily adopted by the Bureau of Census for the elimination of duplication of enumerating the same persons in two different localities and to insure that every individual in the United States is included and not overlooked or omitted. It is also observed that the census is taken only every decade and from decade to decade these rules and regulations are subject to change, modification and interpretation by the Bureau of Census.

If appellants' theory is correct then all of the persons who have their legal domicile and permanent home in the district, but who are temporarily out of

415

the district would be excluded in determining the population of the district. Yet when the election is called, some of these persons would have the right to vote in determining whether a community unit school district should be formed. They could return home and vote or they could vote by absentee ballot. These particular persons who are adults and registered voters could and might well cast decisive votes as to whether or not a unit school district would be formed. It would certainly be an anomaly to hold that these persons are not residents for the purpose of determining the population of the district, but that they are residents for the purpose of voting on the proposition to organize the district.

■ A community unit school district may be organized under the provision of Section 8–9, Chapter 122, Ill. Rev. Stat., 1957, if the district has a population of not less than 1500 nor more than 500,000 persons. The statutory population requirement is a jurisdictional prerequisite for the formation of a unit school district. Both Webster's and Winston's Dictionaries define population as the total number of people, persons or inhabitants in a country, state, town, etc. Black's Law Dictionary, Third Edition, at page 962, defines inhabitant as "one who resides actually and permanently in a given place, and has his domicile there." This same law dictionary further states that the words inhabitant, citizen and resident as employed in different constitutions to define the qualifications of electors, mean substantially the same thing; and one is an inhabitant, resident or citizen at the place where he has his domicile or home. For purposes of the Illinois School Code, it is our opinion that the term population includes permanent residents and persons domiciled in the territory. Having determined that population includes permanent residents and per-

416

sons domiciled in the proposed unit school district for the purposes of calling an election for or against the formation of such district, it then becomes necessary to consider what constitutes permanent residence or domicile.

 A person can have only one domicile and once he establishes a domicile or permanent residence he retains it until a new one is established. To establish a domicile, two things are required. First, a person must physically go to the new home and live there. Secondly, he must do so with the intention of making it his permanent home. Temporary absence, no matter for how long a period, does not establish a new residence. Hughes v. Illinois Public Aid Commission, 2 Ill.2d 374, 118 N.E.2d 14. The domicile is the place where a person lives and has his true permanent home, to which, whenever he is absent, he has an intention of returning. The question of a person's domicile is largely one of intent. Peirce v. Peirce, 379 Ill. 185, 39 N.E.2d 990.

As to the nine persons in military service, the Constitution of the State of Illinois of 1870, Article VII, Section 4, provides:

> "No elector shall be deemed to have lost his residence in this state by reason of his absence on business of the United States, or of this state, or in the military or naval service of the United States."

██ ██ In Knowlton v. Knowlton, 155 Ill. 158, 39 N. E. 595, the court had before it a suit for separate maintenance in which it was necessary to consider the domicile of a person in the naval service of the United States. This person had been away from his home for some three years and at times had lived with his wife in places other than his domicile of origin.

417

The court concluded this person maintained his original domicile during all of this period. We are of the opinion that the trial court was correct in concluding that the nine persons away from the district in the military service were legal residents of the districts and should have been counted for the purpose of determining population within the school district. All nine of these persons who were single admittedly maintained their permanent address in the district with their parents. As to Mr. and Mrs. Marshall Sancken and their minor son, the same rule would apply. If Mr. Sancken was to be included while in the military service, it would necessarily follow that he and his wife and son would be included as residents of the district while they were enroute home.

As to the nine persons who were students in college or taking nurses training, it is quite evident that they were inhabitants of the district and maintained their permanent residence or domicile in the proposed unit school district. In Welch v. Shumway, 232 Ill. 54, 88–89, 83 N. E. 549, 562–563, the court considered the right of a student in a college to vote and therein stated:

> "A student in a college town is presumed not to have the right to vote. If he attempts to vote, the burden is upon him to prove his residence at that place, and it must be done by other evidence than his mere presence in the town. (10 Am. & Eng. Ency. of Law, 2d ed., p. 605.) The fact that a student has resided in a college town the necessary length of time does not, of itself, entitle him to vote there. . . . The controlling inquiry in deciding the residence of students, as with all others, is where 'does the party actually make his home and claim for the time to exercise the rights of property or of citizenship incident to or resulting from permanent residence?' Kreitz v. Behrens-

meyer, 125 Ill. 141, 17 N. E. 232, 8 Am. St. Rep. 349."

 All of the nine persons who were students in college or taking nurses' training had their permanent homes with their parents within the district at all times other than when they were temporarily away attending school. All of these nine were minors with the exception of one and the one in the group who was of age was registered to vote within the district. As to the eight minors in this particular group, it is well settled that a father is the natural guardian of a minor and the minor's domicile is the same as that of his father. At common law the father was the natural guardian of his minor child and because of this his domicile was the domicile of the child. At the death of the father an infant took the domicile of its mother and on death of both parents, the domicile of the child continued to be during its minority, that of its last surviving parent. A child could not, of its own volition, change its domicile. People v. Wingate, 376 Ill. 244, 33 N.E.2d 467.

 ██ Nellie Shutz and Dillard Ross were both registered to vote in the district. Nellie Shutz was an old lady, who because of her age, was required to be a patient at a nursing home outside of the district. Dillard Ross became a patient at the Livingston County Home approximately three months before the date of the filing of the petition. It is clear from a review of the record that both of these persons did not exhibit any intent to change their permanent residence from other than the district in which they lived and were registered to vote. In Welch v. Shumway, supra, the court considered the rights of an old man who came from the county Alms House to vote in the district where he lived before entering the Alms House. The court therein stated that a temporary departure from

419

his home did not take away his legal residence in the place from which he came and that a party does not forfeit his residence in a precinct in which he was a voter merely by becoming a county charge. The trial court properly included Nellie Shutz and Dillard Ross within the population of the proposed unit school district. Barbara Gerdes was a patient at the Lincoln Hospital, Lincoln, Illinois, she was single and about twelve years of age and lived with her parents within the proposed district prior to entering the Lincoln Hospital as a patient. Under the authority of Welch v. Shumway, supra, she did not lose her residence in the district by leaving for medical treatment and being a minor she could not change her legal residence from that of her parents who resided in the district. People v. Wingate, supra.

As to the six persons who worked full time at places of employment outside of the district and lived and slept in the towns where they were working during the work week, each of them were single and five had parents residing in the district and each of them returned to their parents home during weekends, holidays and vacations. One exception in this group was Nina Chesebro, who was registered to vote, had no parents but owned a home with her sister in the district and lived there on weekends and vacations. Three of these persons were old enough to vote and were registered to vote in the district. It is certainly clear from the record that the three who were registered to vote in the district evidenced no intention of changing their legal residence outside the district. The three minors in this group attended church within the district each Sunday and spent the weekends with their parents at their home address and under the authority of People v. Wingate, supra, they are assumed to have the same domicile as their parents who resided within the district.

420

For the reasons stated, the order appealed from is affirmed.

Judgment affirmed.

CROW, P. J., concurs.

SPIVEY, J., concurs.