Philip Winslow, Plaintiff-Appellee, v. Vera Lewis,
Defendant-Appellant.

Gen. No. 11,065.

Second District, Second Division.
October 9, 1957.
Rehearing denied November 6, 1957.
Released for publication November 6, 1957.

Besse & Besse, of Sterling, for appellant.

Robert L. Morris, of Lanark, and Lawrence A. Smith, of Savanna, for appellee.

PRESIDING JUSTICE CROW delivered the opinion of the court.

The plaintiff, Philip Winslow, filed a petition, later amended, in the Circuit Court of Carroll county for a writ of habeas corpus directed to the defendant, Vera Lewis, demanding that she bring Asta Jean Lewis, her niece, a minor child, into court and show cause for the detention of the child. The defendant answered the petition and also set up an affirmative defense denying that it was to the best interests and welfare of the child that she be turned over to the plaintiff, and alleging her best interests would be served by leaving her with the defendant. After hearing the testimony, the court ordered that a writ of habeas corpus issue and directed the defendant to bring the minor child before the court on the 9th day of January, 1957, and found that the best interests of the child would be served if she was returned to the plaintiff, Philip Winslow, who was the Wisconsin guardian of the person and estate of the child, for placement with her brother and sister in the home of a Mr. and Mrs. Earl Ferguson at West Salem, Wisconsin. The defendant Vera Lewis has appealed from that order.

The plaintiff, Philip Winslow, on January 31, 1956, was appointed by the County Court of Richland county, Wisconsin, guardian of the persons and estates of the three minor children of Harry Lewis and his wife, Ruth, both parents being deceased. Both the paternal and maternal grandmothers of the children joined in

67

the petition to appoint Philip Winslow guardian. The plaintiff is not a relative but is a brother of one Paul Winslow who is married to a paternal aunt. The defendant in the present case, and Burl Lewis, a paternal uncle of the children, had asked the plaintiff to act as guardian. Harry Lewis, father of the children, then about 35–40 years old, was killed in an automobile accident in August, 1955, and in December, 1955, the mother, Ruth Lewis, was also killed. The parents at the times of their deaths were residents of and domiciled in Richland County, Wisconsin, as were the three surviving children, Harold, Ruth, and the child here concerned, Asta. Asta had been born in Wisconsin and lived there until the defendant took her to Milledgeville, Illinois, as hereinafter referred to. All of the children after the deaths of the parents were taken to the home of Sarah Bruha, the maternal grandmother, also resident in Wisconsin. Shortly afterwards Burl Lewis, a paternal uncle of the children, kept two of them, Harold, and Ruth. Lenna Ruse a paternal aunt of the children, also resident in Wisconsin, kept Asta, the youngest, and the subject of this law suit, who was 10 months old at the deaths of her parents, the other two children being then about three years and two years old, respectively. She retained the child from December 20, 1955 to March 3, 1956. On that date, March 3, 1956, after notifying the plaintiff guardian, she gave the child to Vera Lewis, another paternal aunt, the defendant herein, who brought the child to her home in Milledgeville, Illinois, to relieve her sister Lenna whose health was not good. Prior to taking the child, Vera Lewis also contacted the plaintiff, Philip Winslow, requested permission to take the child, and he consented to the changed arrangement and gave permission. The plaintiff had not told the defendant she could have the child permanently and the defendant did not indicate she intended

68

to keep the child permanently. The defendant Vera Lewis has had the child with her, under those circumstances, to the present date, from March 3, 1956.

The defendant, on March 3, 1956, talked with the plaintiff and they discussed the defendant's care of Asta. The plaintiff advised the defendant that because of the desires of the family he hoped to place all these children in a home for adoption. The defendant had advised the plaintiff at different times that she desired to take all three of the children in her home if the Wisconsin Welfare Department gave her the opportunity. She told the plaintiff that she did not want them placed outside the family. Another aunt, a paternal aunt, Eva Winslow, also had indicated at one time to the plaintiff she was willing to take any or all of the children and objected to any adoption by non-relatives.

The defendant wrote the plaintiff several times after she had taken the child to her home in Milledgeville expressing the child's well being and her pleasure in having the care of the child. The plaintiff acknowledged the communications March 14, 1956, but cautioned the defendant not to become too deeply attached to the child, indicating that her care was merely temporary until he was able to secure permanent placement. He stated further in his letter to the defendant: ". . . Whichever home we find has the most to offer them there they ought to be placed and we all better be satisfied by that decision. I presume you know the court order I am under is to allow $50 per month for her care payable at the end of each month. This includes clothing, good care and incidental medical expense. I am pleased to know of your willingness to care for the other two if necessary." The defendant did not answer that letter or state any objections to the plaintiff's comments. The maternal grandmother and three maternal aunts all had told the plaintiff guardian that they wanted the children kept together, and, on behalf

of the plaintiff, the maternal grandmother testified herein that she believed Asta's best interests would be served if she were permitted to grow up with her brother and sister. Bertha Lewis, the paternal grandmother, did not want the children adopted by nonrelatives. Two or three paternal aunts had expressed a desire to the plaintiff that the children be placed within the family.

Up to and after March 4, 1956 when the child Asta went to the defendant's home, the plaintiff guardian sought homes for possible placement of all three children. He ultimately found one,—the Earl Ferguson home in West Salem, Wisconsin. The LaCrosse county, Wisconsin Welfare Department investigated this home and the plaintiff received a letter stating that it had been licensed as a home for foster care. Two paternal uncles of the children, brothers of the defendant, both of whom testified herein for the plaintiff, went with the plaintiff guardian to investigate the Ferguson home, they said they thought the children should, if possible, be kept together, and one said they should be adopted out of the family, and that the Fergusons would make a better home for them than any of the family could. The plaintiff placed the two older children, Harold, and Ruth, there on April 16, 1956. The Fergusons, Earl and his wife, Lydia, both of whom testified herein for the plaintiff, are not related to the children or any of the parties, have indicated they wish to adopt these two children and have filed a petition for their adoption, and they also intend to petition to adopt this youngest child, Asta, if she is given to them. Their petition, as to the two older children, had not been acted upon by the Wisconsin Court when the case at bar was heard by the Circuit Court of Carroll county. The Fergusons are apparently responsible and proper persons and the moral fitness, financial ability, or propriety of them or their home has not been questioned.

70

They have been married 12 years, have no children, he is 32 years old, and gainfully employed. Mrs. Ferguson has not worked outside the home since the two older children have been living there.

The defendant Vera Lewis is 42 years old, unmarried, and has never been married. She is a college graduate, has been a grade school teacher 11 years, presently is employed at Milledgeville, and has been for 9 years, and earns approximately $3,850 per year. She lives in a three-room apartment, with bath, large living room, kitchen, and bedroom. The defendant is away from her apartment at her teaching position from 8:30 a.m. to 4:00 p.m. on school days. She has employed a lady who comes to the apartment and stays with the child during the defendant's absence. The minor child, Asta, is healthy and apparently well taken care of in the defendant's apartment, and she is apparently a fit and proper person, of good character.

On April 2, 1956, about one month after the defendant had had the child with her, the plaintiff notified the defendant by letter that a foster home, with the Fergusons, had been found, and requested her to return Asta to him in Wisconsin on April 16, 1956. On April 10, 1956 the plaintiff called the defendant by telephone and asked her if she was planning to return the child and she said "no." He then said he would come after the child, and made two trips to Milledgeville for that purpose, on one of which he was accompanied by the mother and a brother of the defendant, and on the other he was accompanied by a Wisconsin social welfare worker and another gentleman. The defendant refused to surrender the child. The child was about 13 months old when she was brought to live with the defendant. As of April 16, 1956, when the defendant was requested to return the child to Wisconsin she had been with the defendant about six weeks.

71

After the two older children, Harold, and Ruth, had been placed in the Ferguson home, the defendant and her sister, Eva Winslow, a paternal aunt, petitioned the County Court of Richland county, Wisconsin, for an order directing the plaintiff guardian to cease and desist from attempting to interfere with the defendant's custody of Asta, and to remove Harold and Ruth from the Ferguson home and place them in the defendant's home, or Eva Winslow's home, or in the home of some other fit and suitable member of the family. The plaintiff guardian answered that petition and took issue in most respects. That cause was heard in the Wisconsin Court, testimony was taken, and on November 27, 1956 the Wisconsin Court made an order to the effect that the fitness of the Ferguson home and the character and ability of the Fergusons to provide the children a good home and emotional stability had not been challenged, the plaintiff Philip Winslow had acted in good faith, according to his best judgment, and with the welfare of the children in mind, the guardian had not been shown to be unfit, and that court declined to interfere with the guardian's custody and control of the minor, Asta Jean Lewis, or the other minors, or to remove the guardian.

The witnesses herein for the plaintiff, in addition to the plaintiff himself, were Sylvia Wepking, a case worker for the Richland county, Wisconsin, Welfare Department; Sarah Bruha, the maternal grandmother; Earl Ferguson and Lydia Ferguson; and Burl Lewis and Roy Lewis, paternal uncles, and brothers of the defendant. The witnesses for the defendant, in addition to the defendant herself, were Lenna Ruse, a paternal aunt, and a sister of the defendant; Clare Heyer and Mrs. Earl Woodin, character witnesses for the defendant; and, by stipulation, the superintendent of schools, and a minister, of Milledgeville and Sterling, also character witnesses for the defendant.

The defendant's theory is that an Illinois Court has jurisdiction to determine the custody of an infant child found within Illinois, whether domiciled in Illinois or not, and even though there be an existing guardianship proceeding in another state; the primary consideration upon a question of custody of a child is the welfare and best interests of the child; a blood relative, the defendant aunt, is entitled to custody of the minor child in preference to a stranger, or non-relative, the plaintiff guardian, or the Fergusons; the best interests of the minor child Asta will not be served by delivering the child to the plaintiff guardian so that placement can be had with the Fergusons, who are not relatives, and who will file a petition for adoption of the child; and the evidence does not support the decision of the trial court. In the conclusion of her brief the defendant says this is a question between the right of strangers (the Fergusons) being given the child Asta, as opposed to a blood relative (the defendant aunt), that both the Fergusons and the defendant are of good character, and that both equally desire that the child's best interests be served. She asks that her "solemn and sacred moral rights" be recognized.

The plaintiff agrees that an Illinois Court has jurisdiction to determine the custody of this child, under the circumstances; that the primary consideration is her welfare and best interests; says that her welfare and best interests will be served by her being returned to the plaintiff for placement with her brother and sister with the Fergusons; denies that a blood relative, the defendant aunt, has any preference in determining the custody; says the defendant unlawfully removed the child from Wisconsin and unlawfully refuses to return her; and the trial court's findings and conclusions are not clearly and palpably against the manifest weight of the evidence.

■■ The jurisdiction of a state to regulate, through proceedings in its courts, the custody of infants found within its territory arises out of the power every sovereignty possesses as parens patriae to every child within its borders to determine its status and the custody that will best meet its needs and wants; jurisdiction does not depend on the domicile of the child within this state,—residence here suffices even though the domicile be in another jurisdiction: People ex rel. Noonan v. Wingate (1941) 376 Ill. 244. Hence, this minor child being at the time resident here and found here, an Illinois Court may properly determine her custody even though her legal domicile was Wisconsin, but the facts as to her place of birth and legal domicile are relevant circumstances to be considered.

■ Where the custody of a minor child is involved in an habeas corpus proceeding, the best interests and the present and prospective welfare of the child are the primary considerations: People ex rel. Noonan v. Wingate, supra. That applies even in a case where the father is a party to the proceeding against a stranger, a non-relative; the father is not necessarily under all conditions entitled to custody merely because he is the father; such still depends on what is for the best interests of the child under all the circumstances, taking into account the father's status and natural rights: Sullivan v. People ex rel. Heeney (1906) 224 Ill. 468. The real issue here, therefore, is what is for the best interests and present and prospective welfare of this minor child.

■■ That one of the parties contending for the custody of a minor child, such as the plaintiff here, is the guardian of the person of the child by virtue of proper court proceedings in another state where the child had its legal domicile does not in itself require an Illinois Court to deliver the child to that guardian without a full consideration of the evidence to determine

74

what is best for the child; the order of appointment of the guardian by the court of the other state is not a bar to the exercise of the judicial power of an Illinois Court where the custody question arises to determine the status of the child and what is for its best interests; but the fact of such appointment of one of the parties as guardian is admissible in evidence as a relevant circumstance, to be considered as one of the material factors,—though not a controlling circumstance,—in the case: People ex rel. Noonan v. Wingate, supra. Even where a guardian of the person of a minor child had been appointed by another Illinois Court that does not in itself require the custody of the child to be delivered to him in a later habeas corpus proceeding in another Illinois Court where such would not be in the best interests of the minor child: Petition of Smith (1851) 13 Ill. 138.

■ Nor does the fact that one of the parties contending for the custody of a minor child is a blood relative, the paternal grandmother, as well as being the guardian of the person of the child appointed by a court in the state of legal domicile of the child, and as well as being what was denominated the "natural guardian" of the child, give that paternal grandmother party any preferential right to custody of the child over a collateral blood relative, a maternal uncle; her position, status, and claims are subject to the exercise of the judicial power of the Illinois Court to determine what is to the best interests of the child: People ex rel. Noonan v. Wingate, supra. And a paternal aunt, a collateral blood relative, has no preferential right to custody of a minor child over a stranger, a non-relative; neither the aunt nor the non-relative have any vested interests in the child, and their desires, as such, cannot and do not control the decision of the court; the controlling question is, what is for the best interests of the minor child: Mahon et al. v. People ex rel. Robertson (1905)

218 Ill. 171. A maternal aunt has no legal or natural right, as such, to the custody of a minor child: Stafford v. Stafford (1921) 299 Ill. 438. Hence, the defendant paternal aunt has no preferential right to custody of this minor child over the plaintiff or the Fergusons, though her relationship is a proper relevant circumstance to be considered.

■ ■ The trial court saw and heard the witnesses herein and was in a better position to judge of the credibility of each than are we, and in reaching a conclusion as to what is for the best interests and present and prospective welfare of this minor child the trial court had the benefit of an opportunity personally to observe the plaintiff, the Fergusons, and the defendant, which we do not; normally, the trial court's findings in such a matter under such circumstances will not be disturbed unless we believe they are clearly and palpably erroneous and contrary to the manifest weight of the evidence: People ex rel. Yarmulnick v. Hoff (1944) 323 Ill.App. 535; Scott v. Ashcraft (1950) 342 Ill.App. 33; West v. Le Page (1942) 381 Ill. 131; Clark v. Clark (1948) 398 Ill. 592.

This child is very young. During her short residence with the defendant up to the time the defendant was requested to return her to Wisconsin, or even up to the time of the hearing herein in December, 1956, she could hardly, at her age, have formed such firm attachments that it would be contrary to her best interests to discontinue them, under the circumstances. Both her father and mother, unfortunately, are deceased. Neither of them had ever placed the child with the defendant, or with anyone else. Her closest relatives are her little brother and sister, and they were sufficiently close in age to her that living with them in a normal affectionate brother-sister relationship ought to afford her as normal a family and childhood as is possible under the circumstances. Being with the Fergusons would

76

also give her the nearest thing possible to a mother and father. That would be in accord with the sentiments of many of the child's relatives, though not of all of them,—and perhaps the fact there appears to be some family dissension in that regard is another persuasive factor for placing her custody as the trial court did. That she was born in Wisconsin, had always lived there until her short residency with the defendant, and that Wisconsin is her legal domicile are factors of some weight, though not, of course, controlling. As also is the fact the plaintiff is her legal Wisconsin guardian by virtue of a proceeding approved by representatives of the family, including the defendant, and has evidently been acting in good faith for what he honestly considers to be her best interests. The defendant is a lady of estimable character and undoubtedly is affectionately attached to the child, but the child's living there would, as the matter presently stands and is presented, not permit her living with her brother and sister, would not give her the benefit of a person in the position of a father, and the defendant herself cannot be at home with her during the day on school days. That the maternal grandmother, the Fergusons, and two paternal uncles, brothers of the defendant, all testified herein for the plaintiff are circumstances also of some significance.

All things considered, we cannot say the order of the trial court is clearly and palpably erroneous or contrary to the manifest weight of the evidence. It will, therefore, be affirmed.

Affirmed.

WRIGHT and SOLFISBURG, JJ., concur.