In the Matter of Terry Ray Johnson, Alleged to be a Delinquent Child, the People of the State of Illinois, Petitioners-Appellees, v. Dale Johnson, Margaret Johnson and Terry Ray Johnson, Respondents-Appellants.

In the Matter of Randy Reidelberger, Alleged to be a Delinquent Child, the People of the State of Illinois, Petitioners-Appellees, v. Ralph Reidelberger, Edith Reidelberger and Randy Reidelberger, Respondents-Appellants.

Gen. No. 61–F–9.

Fourth District.

May 25, 1961.

Richard E. White, of Murphysboro, for appellant.

Lloyd Middleton, of Pinckneyville, for appellee.

SCHEINEMAN, J.

This appeal involves an order of the County Court of Perry County finding two boys to be delinquent and committing them to the Illinois Youth Commission. A motion to dismiss the appeal was filed by the State's Attorney stating several grounds, and a motion to amend was filed by the Appellant. These motions were taken with the case.

■ The People are the real parties to this type of case under the Family Court Act, and the State's Attorney properly appears in the case. The motion he filed in this Court states several grounds for dismissing the appeal. It is asserted that the Act provides for review of cases thereunder by writ of error and that all other forms of review are thereby excluded. This was the accepted view of courts of review at one time, but it has been abandoned by rule of court so that under present law, if the issues of the case sufficiently appear upon the record before the reviewing court, the case will be considered as though the proper method of review had been employed. Ch. 110 Ill. Rev. St., Sec. 201.12 (App. Ct. Rule 12), and 101.28 (Sup. Ct. Rule 28). We find that the issues in this case sufficiently appear upon the record before this court and are fully presented by the briefs and abstracts on file.

■■ These proceedings were entitled in the County Court, "In the Matter of Terry Ray Johnson" and "In the Matter of Randy Reidelberger." The proceedings in this court carried the same title and failed to designate Appellant and Appellee as specified by Appellate Court Rule 8(1). The Appellant has filed a motion to show as part of the title the People of

441

the State of Illinois, Petitioners-Appellees, and to designate as Appellants the child's parents and the child, entitled Respondents-Appellants. By Section 92 of the Practice Act the reviewing court has broad powers of amendment, and these powers are extended by the courts to the formal defects in pleadings and in the names of the parties, and other matters. Keyes v. Binkert, 57 Ill. App., 45; Hess v. Peck, 111 Ill. App., 111; and see Note in L.R.A. 1916 D 874. Accordingly, the Appellant's motion to amend the title is allowed.

 It is further contended by the State's Attorney that the notice of appeal and praecipe for record were served upon him only as an individual and not as attorney for the People. It appears that the documents were delivered to him personally in the State's Attorney's Office at the Court House, and that a receipt was tendered to him to sign which referred to him as "State's Attorney." He refused to sign the receipt. We fail to see any better method of serving the State's Attorney than the one used and we must hold that it was a compliance with the statute. Accordingly, the motion to dismiss the appeal is denied and we proceed to consider the merits.

The two cases in this appeal involved two lads, then about the age of 14, who were playmates. They had found access to an unoccupied house and proceeded to fix up a room therein as their "club house." They informed their parents that they were fixing themselves a club house, but the parents were not aware of the location and each one thought the reference was to a place at the other boy's place of residence, so they made no further inquiry. On the third day after the first entrance, the two boys started to fix up the club room. They carried up a table, cut up an oil table cloth, and spread a bag of old curtains and papers on the floor. They also managed to enter the garage which had been rented out and contained the tenant's

442

car. In the glove compartment they found a flashlight and three railroad fusees. They took the flashlight to use in the darkened house. They lit two of the fusees, and held them against some screens in the garage and found that they would burn holes through the wire. The held a fusee against a hub cap, which became discolored. There was a fire extinguisher in the basement and they held some lighted paper under it to see if it would work, and it did.

The damage was not serious and it was soon discovered and reported to the families involved. The deputy who investigated stated that the boys were remorseful over having done the damage. The parents, upon learning of the damage, inquired about making it good. They bought a new hub cap for the car owner and he said he was satisfied. They asked the house owner to have the screens repaired and to replace the fire extinguisher. The owner's total bill for the damage was about $32.00 and this was paid.

Upon the trial there was no evidence of any previous offenses of either boy, except the fire marshal said that when one of them was seven or eight years old he had taken some fusees from a caboose in a railroad yard. Otherwise, the testimony was all to the effect that they were well behaved boys, both of them attended Sunday School and their parents testified they never had any trouble about discipline. Their respective ministers testified to the good character of the boys, to their attendance at services and to the fine character of their parents.

The deputy sheriff who had interviewed the boys was very much impressed by their sincerity and testified that he did not consider them delinquent. Upon this statement the State's Attorney pressed him with questions as to whether he was attempting to state the legal effect of the word, "delinquent," and the witness said he would not undertake to do that, he

was merely stating his understanding of the word. The sheriff also testified, but had very little knowledge of the incident and could not remember what he had told the parents but he might have said there would be no prosecution so long as the damage had been paid for.

■■ Upon considering this evidence we feel that the decision of the court is contrary to the manifest weight of the evidence as to the good character of the boys and of their parents. It is apparent that the deputy sheriff had a better understanding of the word, "delinquent," than the State's Attorney, who seems to have regarded the Family Court Act as a criminal statute designed for punishment of petty offenders.

This is not the purpose of the statute. As long ago as 1903 the then existing statute concerning delinquent children was construed as having the objective of providing care, not punishment; to prevent the boys from becoming criminals, not to punish them as such. City of Chicago v. County of Cook, 106 Ill. App. 47.

■ Perhaps, the State's Attorney proposes to conduct a crusade to stamp out "juvenile delinquency." There is no question the boys did a wrong and were subject to prosecution for the misdemeanor. But this statute was not intended as a means to punish an isolated misdemeanor, and the State's Attorney should not be too hurried with the extreme proposal to take children away from their parents, and put them under State supervision.

■■ The desire of the boys for a clubhouse is almost universal, and boys sometimes do damage unthinkingly. If every juvenile misdemeanor is to result in the State taking charge, few parents are secure in the custody of their children. It has been said that the right of parents to the society and custody of their children is inherent, and that while the statute (Family Court Act) should receive a liberal construction in

444

furtherance of the legitimate object thereof, it should not be held to extend to cases where there is no substantial ground for interference to protect the child. Lindsay v. Lindsay, 257 Ill., 328, 100 N.E. 892; In re Ramelow, 3 Ill. App. 2d, 190, 121 N.E.2d 41.

The latter case further announces: "The courts of this State and the legislature by its expressed language have recognized many, many times that the rights of the parents are paramount and that the state can only step in and take charge of children where the parents by their own misconduct have forfeited their rights to the children or through inability, either financial or otherwise, are unable to properly care for the children. The primary interest in all these cases is the welfare of the child."

The Guardian ad Litem, by his cross-examination, demonstrated that the officers were not expressing a bad opinion of these boys, in fact, their statements were quite favorable. No witness remotely suggested that the boys were of a malicious type, or out of control. And we have mentioned that the evidence is entirely favorable to the parents.

It must be concluded that the County Judge was in error in being persuaded by the zeal of the State's Attorney, upon such a flimsy showing, to find the parents unfit and to order the boys committed to the State. The judgments must be reversed. It is also noted by this court that the zeal of the State's Attorney extended to efforts to prevent the boys from obtaining a supersedeas for review of the case, and he has asserted a number of technicalities in an effort to prevent the cases from being considered on the merits in this court.

Judgment reversed.

CULBERTSON, P. J. and HOFFMAN, J., concur.