The Petition of Harry P. Breger to Have Paul Freeman Seymour and Michael Todd Seymour Declared Dependent Children, Petitioner-Appellee, v. Paul Stanley Seymour, Father of Said Children, Respondent-Appellant.

Gen. No. 66–13.

Second District.

August 22, 1966.

Burl F. Nader, of Libertyville, for appellant.

Bruno W. Stanczak, State's Attorney, of Waukegan (Jack Hoogasian and Robert J. Smart, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Family Division, entered on September 21, 1965, that declared Paul Freeman Seymour and Michael Todd Seymour "dependent children within the meaning of the Statutes of the State of Illinois." That order further found that the natural parents of the children were "unable to properly care" for them, and committed them to the custody of the Angel Guardian Orphanage until further order of court.

The natural father, Paul Stanley Seymour, urges that the trial court had no authority to deprive him of the custody of his children under the statute and that the decision was against the manifest weight of the evidence.

The record discloses that Paul Stanley Seymour and Donna Seymour (now Blake), the natural parents of the children, were divorced in Lake County in 1963. Custody of the children was granted, at that time, to the mother, and the father was ordered to pay to her the sum of $30 per week for their support. At the time of the hearing in

September, 1965, Paul Freeman Seymour was 5½ years old and Michael Todd Seymour was 4 years old.

Both parents remarried but the mother soon separated from her second husband and lived alone with the children in Lake County under circumstances of apparent hardship. The father and his second wife lived in Milwaukee and expected their second child in October, 1965.

On March 1, 1965, at the request of the mother, the children were taken by the father to Milwaukee and stayed with him until July 5, 1965. On that date, they were returned to their mother because, so she stated, the new Mrs. Seymour was unable to cope with them. The Seymours, however, maintain that the children were returned so that they would be able to take a two-week vacation. In any event, the natural mother shortly thereafter applied to the Department of Children's and Family Services for help and readily admitted that she was presently unable, because of her financial problems and poor physical condition, to care for her children. Accordingly, the State's Attorney of Lake County filed a petition under the so-called Family Act (Ill Rev Stats, c 23, §§ 2001–2036, 1965), since repealed, alleging that the parents were "either unfit or improper guardians or are unable or unwilling to care for, protect, train, educate, control or discipline" the children and requesting that they be declared dependent children under the meaning of the Act and placed under the guardianship of some suitable person or institution.

The father was properly served with summons in that proceeding and personally appeared and testified at the hearing before the court. He there stated his willingness and ability to care for the children and requested that their custody be granted to him. As we have seen, the trial court denied his request.

██ ██ It is well established that parents have an inherent right to the society and custody of their own chil-

dren. In re Johnson v. Johnson, 30 Ill App2d 439, 444, 174 NE2d 907. The State may only interfere with that inherent right where it has been forfeited by the parents, either through their misconduct, or their inability to provide proper financial or other care for their children. In re Ramelow, 3 Ill App2d 190, 198, 121 NE2d 41; In re Johnson v. Johnson, ibid., at 445.

The Family Court Act recognized the paramount rights of parents to the custody of their children. Section 2009 of the Act provided, however, in part, as follows:

"2009. Dependent and neglected children—Custody. § 7. If the court shall find any child under the age of 18 years to be dependent or neglected within the meaning of this Act, the court may allow such child to remain at its own home subject to the friendly visitation of a probation officer, and if the parent, parents, guardian or custodian consent thereto, or if the court shall further find that the parent, parents, guardian or custodian of such child are unfit or improper guardians or are unable or unwilling to care for, protect, train, educate or discipline such child, and that it is for the interest of such child and the people of this State that such child be taken from the custody of its parents, custodian or guardian, the court may make an order appointing as guardian of the person of such child, some reputable citizen of good moral character and order such guardian to place such child in some suitable family home which such guardian may provide for such child or the court may enter an order committing such child to some training school or industrial school, to some association embracing in its objects the purpose of caring for or obtaining homes for neglected or dependent children, which association shall have been accredited as hereinafter provided, . . ."

■ ■ It is apparent that under the Act it is not necessary that the parent be "unfit" to be deprived of custody. This is in accord with the common law in this State that the fitness of the natural parent is only one factor, albeit an important one, in the determination of custody. Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 566, 158 NE2d 613. In itself, it is not conclusive but will be considered with other factors, such as financial ability, in the determination of the best welfare of the child.

We do not, therefore, agree with the contention of the father in this appeal that the trial court could not deprive him of the custody of his children unless it found him an "unfit" parent.

■ Under the circumstances as disclosed by testimony at the hearing, we also cannot agree with the father that the decision of the trial court was against the manifest weight of the evidence. Regardless of the willingness of the father to now care for his children, laudatory as that might be, there is considerable doubt as to his ability to furnish either the necessary financial support or environmental surroundings to properly care for them. He earns approximately $85 a week from two jobs; he pays $68 a month towards a $2,000 loan; he pays $60 a month for the rental of his two bedroom home where he resides with his second wife and two children of that marriage. He was unable, because of financial difficulties, to pay any but a small fraction of the child support provided for by the terms of the decree of divorce to the mother of the children. He paid her no more than $120 during the entire year of 1965. His earlier record was, apparently, no better.

The second wife of Paul Stanley Seymour, aged 20 years, admitted that she was often "nervous" with the children when they lived with her and that she had threatened to tape their mouths closed for excessive crying. The youngest child has a nervous disorder and had,

201

at least on one occasion, hidden from her to avoid a "licking" and that he was found by the police. She further stated that her own daughter still made her "nervous."

The trial court indicated that it would not consider an adoption of the children but would periodically review the condition of the natural parents with the view of the return of custody to them when, and if, their condition improved. This course appears to us to be a sound one.

The trial court was in the position to hear the testimony, observe the witnesses, and weigh the evidence. We will not substitute our judgment for the decision of the trial court where, as here, that decision does not appear to be clearly against the weight of the evidence. Giacopelli v. Florence Crittenton Home, ibid., at 566; People ex rel. Pace v. Wood, 50 Ill App2d 63, 68, 200 NE2d 125.

Therefore, the order of the trial court will be affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.