In the Interest of RUSSELL GARMON *et al.*—(The People *ex rel.* WALTER F. FARRAND as State's Attorney *et al.,* Petitioners-Appellees, *v.* RUSSELL GARMON, JR., *et al.,* Respondents-Appellants.)

(No. 11462;

Fourth District—February 7, 1972.

*Rehearing denied March 27, 1972.*

Epler C. Mills, of Virginia, for appellants.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe, Samuel E. Hirsch, and A. Zola Groves, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This appeal concerns the propriety of an order of the trial court adjudging two minors wards of the court, committing them to the Department of Children and Family Services and giving the administrator of that department the power to consent to their adoption. Two separate

petitions were brought under the Juvenile Court Act against the respondents, Russell Garmon, Jr. and Phyllis Garmon in which they were charged with neglect of Donnie Rodgers, age 1, and Russell Warren Garmon, III, age 3 months. The cases were consolidated for hearing and for this appeal.

The history of the case is somewhat long and involved. At the time the petitions were filed, in September, 1969, a temporary order was entered placing the children in the temporary custody of the guardian administrator of the Children and Family Services. The matter was subsequently continued to March 23, 1970, and the children were placed during this period in a foster home. This order was entered under stipulation of the parties that if the parents had rehabilitated themselves to the standards imposed by the Children and Family Services, the children would be returned to the parents. Because of an alleged failure on the part of the parents to rehabilitate themselves, the petitioner requested that the matter be set down for an adjudicatory hearing which was held in April, 1970. Subsequently, the trial court issued an opinion in which the court found that there was abuse of the children; that the children were not given the medical attention to which they were entitled; and there was neglect in the sanitation and cleanliness of the home and neglect as to food being given the minors and that the marriage was not stable. The trial court stated that the difficulty was whether or not the degree of the neglect was such that the parents have forfeited their natural rights and then held under Section 4—7 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 704—7) that the children could be returned to their own home subject to certain conditions which the court prescribed. These conditions were, among other things, that the parents not remove the children from Cass County; that the father of said children refrain from the use of alcohol; that the parents obey the statutes and ordinances of the state; that the father accept reasonable employment or attempt to find employment; that the parents refrain from all future neglect of said children; and that they adequately provide for the care, education and health needs of the children.

The children were thereafter returned to the parents under this order. On July 29, 1970, a petition was filed alleging violations of the aforesaid order in that the father had used alcoholic beverages, and that the parents had neglected the children and had engaged in other prohibited activities. After a combined hearing on adjudication and disposition, as agreed by the parties, the court found that the minors were neglected within the meaning of the Juvenile Court Act and that the parents were unfit. The children were thereupon committed to the Department of

Children and Family Services for care and service and the guardianship administrator was given the authority to consent to the adoption of the minors.

The Juvenile Court Act, ch. 37, par. 701—1, *et. seq.*, adopted in 1965, expressly sets forth the policy of the legislature. Section 1 (Ill. Rev. Stat. 1969, ch. 37, par. 701—1) provides as follows:

"The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safe-guarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should be given by his parents, and in cases where it should and can properly be done to place him in a family home so that he may become a member of the family by legal adoption or otherwise. * * *"

It is further provided that the act should be liberally construed so as to effectuate the purposes set forth therein.

Section 2—4 of the Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—4) defines a neglected minor as a minor under 18 years of age "who is neglected as to proper or necessary support, education * * * or as to medical or other remedial care recognized under State law or other care necessary for his well being * * * or (b) whose environment is injurious to his welfare or whose behavior is injurious to his own welfare or that of others". Once there has been adjudication of the minor as a ward of the court under Section 704—8. (Ill. Rev. Stat. 1969, ch. 37, par. 704—8) Article 5 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 705—1 *et seq.*) provides for a dispositional hearing to determine what disposition may best serve the "interests of the minor and the public". In the case of a neglected child, the alternatives range from continuing the child in the custody of the parents under Section 5—2(c) (Ill. Rev. Stat. 1969, par. 705—2(c)), to the placing of the child with the Children and Family Services with the power to consent to adoption under Sections 5—7 and 5—9, (Ill. Rev. Stat. 1969, ch. 37, par. 705—7 and par. 705—9) if the parents are found unfit or unable for some reason other than financial circumstances to care for the children, or are unwilling to do so. The statute leaves it to the court to determine which of the numerous alternatives will best serve the interest of the minor and public.

■■ The findings of the trial court entered in May of 1970 indicated

both neglect and abuse of the children. There was adequate evidence in the record to support these preliminary findings. The testimony revealed that the children were left with neighbors for indefinite periods of time, that milk had to be borrowed because there was none available for the children; the children were infected with diaper rash and sores on their bottoms and were dirty; and that flies were covering the baby at times. The testimony as to the house showed that at times it was without heat, that it was dirty inside and out, that there was no running water or electricity, that proper sanitation was lacking, and that screens were lacking on the doors, and that the out-house had been knocked over and left that way for a long period of time. There was testimony that both parents were extremely immature in their relationship to each other, and in their relationship to others. Physical fights between the parents appeared to be a recurrent event, to the extent that during this short marriage, the police had been called six times. The evidence also revealed that during these fights, the children were placed in a position where they could have been physically injured. Neither parent appeared to have the capacity, or more important, the desire to maintain steady employment.

The trial court, after hearing this evidence, permitted the children to be returned to the parents under the supervision of the Department of Children and Family Services and under the terms of the aforementioned order. The evidence then reveals that this order was violated in July. The Garmons with several friends and their two children went to a drive-in movie during an evening. Prior to going to the movie, they purchased a considerable quantity of beer which was consumed at the movie. After the movie was out, they drove around from place to place until early morning. During this period of time, the Garmons started fighting. The fight was so violent that another person had to take over driving. Eventually, the car was stopped and the Garmons got out and continued fighting on the ground. Mrs. Garmon reported the incident to the police and Mr. Garmon was subsequently arrested. As a result of this incident, and the cumulative evidence of neglect previously adduced, and further evidence of the refusal of Mr. Garmon to maintain employment, the trial court entered the dispositional order finding the parents unfit and placing the children with the Department of Children and Family Services with power to consent to adoption.

■■■ It is not the function of the appellate court to substitute its judgment for that of the trial court. The trial court, having heard and seen the witnesses, was in a better position to judge the credibility of the witnesses and to weigh the evidence; unless the trial court's findings and order are contrary to the manifest weight of the evidence, the trial

court's determination should not be disturbed. (*Winslow v. Lewis,* 15 Ill.App.2d 65, 144 N.E.2d 782; Petition of *Breger v. Seymour,* 74 Ill.App. 2d 197, 219 N.E.2d 265.) The trial court here saw and heard the witnesses. It gave the parents an opportunity to reform on two separate occasions and they did not. The trial court then found, according to statute, the minors wards of the court, that the parents were unfit for reasons other than financial circumstances alone, and that it was in the best interests of the minors and the public that the minors be placed with the guardianship administrator with the power to consent to adoption. Considering the age of the minors and the facts adduced at the hearing which are recited herein, this court cannot say that such order and such findings are contrary to the manifest weight of the evidence, or that such adjudication and disposition is contrary to the purpose of the Juvenile Court Act to place the children in a proper case "in a family home so that he (they) may become a member of the family by legal adoption or otherwise".

■■■ The brief of the appellees contains a letter from the Children and Family Services relating circumstances occurring after this appeal was filed. These events, occurring subsequent to the trial and appeal cannot be considered by this court in review of the record, as this court reviews the record on appeal as of the date the appeal is taken. *Di Paola v. Seppala,* 336 Ill.App. 344, 83 N.E.2d 889; *John Deere Co. of Moline v. Hinrichs,* 36 Ill.App.2d 255, 183 N.E.2d 309.

In affirming the trial court, we do so without prejudice to proper parties in apt time to proceed further under the provisions of Ill. Rev. Stat. 1971, ch. 37, par. 705—8(2) and 705—11(2), if facts, circumstances and conditions warrant.

For the foregoing reasons, the order of the trial court is affirmed.

Judgment affirmed.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP dissenting:

I would reverse that portion of the order of the trial court authorizing adoption upon the consent of the Department.

The recurring theme found in this record is the "immaturity" of the parents. Human experience is that immaturity usually evolves into a degree of maturity with the passage of time. The record shows that the physical care of the children by the parents was adequate when supervised. The record does not show literal abandonment of the children by the parents or express parental desire to surrender their parental rights.

To deprive persons permanently of all parental claim appears harsh and excessive upon the circumstances before us. Although, the patience of the court may be sorely taxed, in the absence of imperative facts shown to the contrary, I would preserve the statutory rights of the parents to seek restoration of the children.