*In re* CARMEN GONZALES, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAMONA MELENDEZ, Respondent-Appellant.)

(No. 59685;

First District (1st Division)—November 27, 1974.

*Opinion modified upon denial of rehearing January 28, 1975.*

Gary H. Palm, of Mandel Legal Aid Clinic, of Chicago (Beth B. Davis and James G. Wilson, Senior Law Students, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Kevin Sweeney, Edna Selan Epstein, and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

In the circuit court of Cook County (Juvenile Division) Carmen Gonzales, the minor child of Ramona Melendez, was adjudged to be a neglected minor within the meaning of the Juvenile Court Act. (Ill. Rev. Stat. 1971, ch. 37, par. 702—4(1)(b).) At the subsequent dispositional hearing, the child was placed in the custody of Richard S. Laymon of the Illinois Department of Children and Family Services. The mother has appealed from both orders.

The issues are (1) whether the evidence at the adjudicatory hearing was sufficient to support the finding of neglect; (2) whether the State was constitutionally required to fund the nonresident and indigent mother's travel expenses to attend the adjudicatory and dispositional hearings; (3) whether the admission of hearsay evidence at the dispositional hearing, over the objection of respondent, was proper; and (4) whether evidence, which related to the respondent's emotional condition, admitted at the dispositional hearing, was violative of the respondent's psychiatrist-patient privilege.

After a careful review of the record, we conclude that the finding at the adjudicatory stage (that Carmen Gonzales was a neglected minor in that her environment was injurious to her welfare) is not supported by and is contrary to the manifest weight of the evidence. Accordingly, we reverse both orders and remand the cause to the trial court.

This case presents a novel factual situation in that Carmen and her mother, Mrs. Melendez, were both nonresidents of the State of Illinois on December 20, 1972, the date the petition for adjudication of wardship was filed. Mrs. Melendez, Carmen, and other members of Carmen's family permanently resided in Springfield, Massachusetts. It appears from the record that sometime late in 1972, Mrs. Melendez and her children came to Chicago for the purpose of visiting Anita Lebron, the child's aunt. It was during this visit that Carmen was admitted to the Illinois Masonic Hospital. Dr. Frederick G. Berlinger, the treating physi-

cian, testified that Carmen was hospitalized for a complication of diabetes known as diabetes acidosis. Upon the stabilization of her condition, Carmen was released from the hospital.

During the first hospitalization of Carmen, Lois Fuhrer, a registered nurse who taught classes for diabetic patients, met with Carmen to instruct her on the care of her diabetic condition. Ms. Fuhrer testified that Carmen, who was then 8 years of age, seemed very knowledgeable about her condition and the manner of treating it. Carmen informed her that she had attended a summer camp for diabetic children while in the custody of her mother. Ms. Fuhrer testified that she had supervised Carmen's insulin injection technique and considered it very good, and also had supervised Carmen in the testing of her urine. According to the testimony of Ms. Fuhrer, Carmen knew that it was imperative that she report certain symptoms if experienced by her. In addition, her testimony revealed Carmen had knowledge of the principles of a proper diabetic diet.

Ms. Fuhrer was unsuccessful in her attempts to contact Mrs. Melendez regarding her child's medical problem. However, upon discovering that Carmen would be staying with her aunt when released from the hospital, Ms. Fuhrer contacted her aunt, who subsequently attended a seminar on dietary management for the diabetic and received printed literature on the disease. Ms. Fuhrer testified that in speaking with Carmen's aunt, she was informed that she was a nurses' aid, familiar with the testing of urine in such cases.

After Carmen was released from the hospital, she was visited by Lee Bovian from the Visiting Nurse Association, upon the request of the Illinois Masonic Hospital. At her initial visit on December 11, 1972, Ms. Bovian reported that Carmen did not have her diet list, nor did she have the proper urine testing equipment, consisting of tablets usually provided to patients upon their release from the hospital. (The testimony was uncertain as to whether such items were provided to Carmen.) On this occasion, Carmen had already administered her insulin injection. Ms. Bovian returned the following day for the purpose of observing Carmen administer the prescribed dosage of insulin and to supply the dietary list. At this second visit, according to the testimony of Ms. Bovian, Carmen used the proper procedure in administering the prescribed dosage of insulin.

On that same day of Ms. Bovian's second visit, Carmen was scheduled for a routine "follow-up examination" by Dr. Berlinger. He testified that she was once again in a state of diabetes acidosis, and he readmitted her to the hospital. When asked his opinion as to what was the cause

of Carmen's relapse in so short a period of time, Dr. Berlinger responded, "Well, there can be any number of causes for a diabetic to go out of control, but in such a short time, four days after leaving the hospital in excellent shape, * * * the most common cause of that is the misuse of insulin at home."

Upon readmitting Carmen to the hospital for treatment of the relapse of diabetes acidosis, a suspected case of child neglect was reported by the hospital. Pursuant to the report, the petition for adjudication of wardship was filed, alleging that Carmen's environment was injurious to her welfare in violation of section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—4(1)(b)).

On the basis of the above testimony, the trial judge entered a finding that Carmen was a neglected child within the said statute in that her environment was injurious to her welfare, and accordingly declared her a neglected minor, placing her in the custody of Richard S. Laymon of the Illinois Department of Children and Family Services.

Before the adjudicatory hearing, Mrs. Melendez had returned, with the other members of the family, to her permanent residence in Massachusetts. Counsel for the respondent presented a motion requesting an order that the State provide travel funds, enabling Mrs. Melendez to return to Chicago for the purpose of testifying at the adjudicatory hearing. This motion was denied by the trial court. Counsel for the respondent argued that because Mrs. Melendez was an indigent welfare recipient in Massachusetts, she was without the financial means to have the opportunity to be heard at the hearing as provided by statute (Ill. Rev. Stat. 1971, ch. 37, par. 701—20 (1)):

"Except as provided in this Section and paragraph (2) of Section 5—1, the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. At the request of any party financially unable to employ counsel, the court shall appoint counsel."

It is contended that the denial of the motion for travel funds effectively denied Mrs. Melendez of the rights afforded her by virtue of this statute. Respondent contends that the denial of this motion rendered the statutory rights of Carmen's mother meaningless in this situation, and in essence, constituted a denial of due process and equal protection.

Immediately following the trial court's finding of neglect, the dispositional hearing was held to determine whether guardianship should be established in Illinois or in Massachusetts. Ms. June Shore, who had been assigned to the case by the Department of Children and Family Services, testified that her attempts to contact the aunt with whom Carmen and her mother had been visiting prior to her relapse were futile. Ms. Shore had communicated with the Massachusetts' agencies that had contact with Mrs. Melendez, and had received a written report from the public aid department in Springfield, Massachusetts. Over respondent's objection, Ms. Shore was allowed to summarize the contents of the report, stating that Mrs. Melendez had been hospitalized at some prior point in time for a suicide attempt. The report, as summarized by Ms. Shore, also indicated that Mrs. Melendez had in the past lived with several different men and that her son had been sexually abused. The agency's report revealed that Mrs. Melendez had voluntarily placed Carmen in a foster home. The report, it appears from the record, was silent as to the time and circumstances of this voluntary placement. None of the testimony given by Ms. Shore was verified or substantiated by further evidence, nor was the report submitted into evidence.

Further, Ms. Shore was allowed to testify, over the respondent's objection, to a telephonic communication with Dr. Pomerantz, Assistant Regional Mental Health Administrator in Massachusetts, who had occasion to evaluate Mrs. Melendez, but had never examined Carmen. Ms. Shore stated that in the opinion of Dr. Pomerantz, Mrs. Melendez was emotionally in a better position without Carmen and that the child and the mother were destructive of each other in their interaction. Counsel's motion to strike this testimony in the absence of a waiver of his client's psychiatrist-patient privilege was denied by the trial court. This testimony of Ms. Shore relating the opinion of Dr. Pomerantz was unequivocally contradicted by an affidavit executed by Dr. Pomerantz, which subsequently was submitted to the court with a motion for a new trial. In the affidavit, Dr. Pomerantz stated that, in his opinion, "[I]f the child returns or does not return, it will not affect Mrs. Melendez's basic psychiatric condition in any way." In addition, the affiant stated, "At no time did I obtain the permission of Mrs. Melendez to release any information concerning her treatment by me."

With regard to this testimony at the dispositional hearing, as distinguished from the adjudicatory hearing, it should be noted that the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 705—1(1)) provides:

"After adjudging the minor a ward of the court, the court shall

hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing."

Pursuant to the State's request that the court interrogate Carmen concerning her mother, preference for placement in Illinois or in Massachusetts, and her feelings about her present placement, the court conducted an *in camera* discussion with Carmen. In this discussion, Carmen said that she loved her mother and desired to see her. (She had not had any contact with her mother since Mrs. Melendez returned to Massachusetts.) In response to the court's inquiry as to whether she wanted to live with her mother someday, Carmen answered that she did, even though she did not care for her mother's husband. Regarding her preference for placement, Carmen's statements appear to be somewhat inconsistent. She responded that she would like her mother to visit her if placed in a foster home. On the other hand, Carmen answered that she would prefer living in her present foster home rather than being placed in a foster home in Massachusetts, which would facilitate visitation by her mother.

At the termination of the proceedings, the court vacated the temporary custody order and appointed Richard S. Laymon of the Department of Children and Family Services guardian with the right to place. This agency was instructed by the court to use its best efforts to re-establish contact between Carmen and her mother. Presently, Carmen is residing in a foster home in Illinois.

■■ Having stated the facts, we now consider whether the adjudicatory finding that Carmen Gonzales was a neglected minor is supported by or is contrary to the manifest weight of the evidence. The statute under which the petition for adjudication of wardship was filed (Ill. Rev. 1971, ch. 37, par. 702—4) defines a neglected minor as one under 18 years of age:

"(a) who is neglected as to proper or necessary support, education as required by law, or as to medical or other remedial care recognized under State law or other care necessary for his well-being, or who is abandoned by his parents, guardian or custodian; or

(b) *whose environment is injurious to his welfare* or whose behavior is injurious to his own welfare or that of others." (Emphasis ours.)

Specifically, in the case of Carmen Gonzales, we must determine whether the finding that her environment was injurious to her welfare is contrary to the manifest weight of the evidence. The proper standard of proof applicable in an adjudication of neglect or dependency is a preponderance of the evidence, not proof beyond a reasonable doubt. (Ill. Rev. Stat. 1971, ch. 37, par. 704—6.) The burden of proof is, of course, on the State.

■■■ As stated in *Petition of Breger v. Seymour* (1966), 74 Ill.App.2d 197, 199-200, 219 N.E.2d 265:

> "It is well established that parents have an inherent right to the society and custody of their own children. In re Johnson v. Johnson, 30 Ill.App.2d 439, 444, 174 N.E.2d 907. The State may only interfere with that inherent right where it has been forfeited by the parents, either through their misconduct, or their inability to provide proper financial or other care for their children. In re Ramelow, 3 Ill.App.2d 190, 198, 121 N.E.2d 41; In re Johnson v. Johnson, ibid., at 445."

The natural parent has the superior right to the custody of his child, but such right must always yield to the welfare and best interest of the child. People ex rel. *Pace v. Wood* (1964), 50 Ill.App.2d 63, 200 N.E.2d 125, 127, citing *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 158 N.E.2d 613.

■■■ The State's interest in this particular case in which the parent is a non-resident is established in that the State, as *parens patriae*, has a responsibility to care for and protect any child within its borders. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624, 104 N.E. 2d 769.) Consequently, the legal residence of the child does not technically affect the jurisdiction of the court, so long as the child is physically present within the State. (*In re Finch* (1963), 40 Ill.App.2d 18, 189 N.E.2d 678; 27 I.L.P. *Minors* § 14 (1956). See also 1948 Op. Atty. Gen. 78, and Ill. Rev. Stat. 1971, ch. 37, par. 702—6(1).) We note, however, that in the present factual situation the State's interest is indeed minimal.

■■ In determining what constitutes sufficient evidence supporting a finding of neglect, the court is without specific guidelines. At best, nebulous language, such as "'welfare', 'best interest', 'good reason' and 'fitness' have been discussed and applied in a multitude of circumstances, a variety of relationships and, depending upon the type of proceedings, with varying emphasis." (*In re Guardianship of Nichols* (1966), 70 Ill. App.2d 376, 380, 216 N.E.2d 690.) There is no fixed standard. Indeed, this court has approved of a flexible standard of proof in order that

different factual situations may be accommodated. *In re Interest of Stacey* (1973), 16 Ill.App.3d 179, 183, 305 N.E.2d 634.

■■ The court recognizes that it is not the function of this court to substitute its judgment for that of the trial court, unless the trial court's findings are contrary to the manifest weight of evidence. (*In the Interest of Garmon* (1972), 4 Ill.App.3d 391, 395, 280 N.E.2d 19; citing *Winslow v. Lewis* (1957), 15 Ill.App.2d 65, 144 N.E.2d 782; *Petition of Breger v. Seymour* (1966), 74 Ill.App.2d 197, 219 N.E.2d 265; *People v. Hackman* (1971), 1 Ill.App.3d 1030, 275 N.E.2d 488; *In the Interest of Stacey* (1973), 16 Ill.App.3d 179, 305 N.E.2d 634.) After examining the facts of this case, we conclude, however, that the adjudicatory finding (that Carmen Gonzales was a neglected child in that her environment was injurious to her welfare) is not supported by and is contrary to the manifest weight of the evidence produced at the hearing. The evidence at that hearing demonstrated only that Carmen Gonzales was treated for diabetes acidosis twice within a relatively short period of time. No evidence was produced from which one could reasonably infer that the causative factor of this medical condition was her environment. It is a non sequitur to find that because Carmen had a severe diabetic condition her environment was injurious to her welfare. The mere fact of the severity of her condition does not give rise to an inference of parental neglect.

■ Although Dr. Berlinger testified that the most common cause of such a relapse is the misuse of insulin at home, he also conceded that there are many other possible causes for such a condition, especially in children. In light of Ms. Bovian's testimony that she observed Carmen properly administer the prescribed dosage of insulin on the day Dr. Berlinger readmitted her, it is difficult to conclude that misuse of insulin in the home produced the relapse of the condition. As to the absence of the proper urine testing equipment and the lack of a dietary list in the home, this evidence is not sufficient to support a finding of neglect since there was no evidence that she had been given these items upon release from her first hospitalization. Further, according to the testimony of Ms. Fuhrer, Carmen herself was aware of the principles of a proper diabetic diet, and her aunt had attended a class on dietary management for the diabetic. The State's contention that parental neglect in failing to provide a proper diet for the child resulted in the relapse of Carmen's condition is wholly unsubstantiated by the record.

Since we conclude that the trial court's finding is not supported by and is contrary to the manifest weight of the evidence, it is not necessary to reach the other issues presented by respondent on this appeal.

Accordingly, the orders are reversed and the cause is remanded to the circuit court for the entry of an order dismissing the petition and discharging the minor from custody.

Reversed and remanded.

EGAN, P. J., and GOLDBERG, J., concur.