In re FAITH AUGUSTA STILLEY, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. ROCHELLE STILLEY, Respondent-Appellant.)

First District (4th Division)    No. 61219

Opinion filed March 24, 1976.—Rehearing denied April 29, 1976.

JOHNSON, P. J., dissenting.

James J. Doherty, Public Defender, of Chicago (Frances G. Sowa, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Marcia B. Orr, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Rochelle Stilley appeals from a judgment of the Circuit Court of Cook County finding that her daughter, Faith Augusta Stilley, was neglected pursuant to section 2—4(1) (a) of the Juvenile Court Act. Ill. Rev. Stat. 1973, ch. 37, §702—4(1) (a).

The issue on appeal is whether the State proved by a preponderance of the evidence that the child was neglected.

A petition of adjudication of wardship was filed on October 26, 1973, alleging the child was neglected "as to the care necessary to her well being." The petition was filed as a result of Faith Stilley, aged four, having wandered from the home of her great-grandmother about 11 p.m. on October 22, 1973, and was picked up by the police.

The State filed a bill of particulars asserting that Faith Stilley was neglected in that (1) she was wandering the streets one-half to one mile from her home on October 22, 1973; (2) she was repeatedly left in the custody of neighbors by her mother who failed to return for her in a reasonable length of time; (3) she was subjected to physical abuse in July of 1971, either intentionally or through gross negligence; (4) her mother was mentally and emotionally incompetent to care for her because she suffered from anxiety and depression causing her to be hospitalized at the Tinley Park Mental Health Center on two occasions and because she was addicted to narcotics and alcohol; and (5) she was emotionally disturbed and neither her mother nor father could provide the necessary care to deal with her disturbance.

At trial the State also presented evidence the respondent had engaged in acts of prostitution.

The respondent denied each of the particulars.

Faith Stilley was born on August 8, 1969, and her mother, Rochelle Stilley, testified she had lived with Augustus Scott, Faith's natural father, from 1968 to 1972. During this period of time Rochelle Stilley became a heroin addict.

The testimony at trial established that on October 22, 1973, while Rochelle Stilley was detoxifying from methadone, she arranged for the nursery school bus to bring Faith to her great-grandmother's house, where she

planned to pick her up later that night. Faith slipped out of the house and was found by the police. When the respondent arrived at the house she discovered that Faith was not there. She could not understand her grandmother, who spoke Polish, and assumed that her aunt or cousin, who lived across the street, had taken the child to their home. Because of the late hour she waited until the next morning before making further inquiry, and then phoned the police.

Mrs. Leslie, the respondent's mother, testified that Faith's great-grandmother, who was 86 years old, was an able baby sitter. She was able to cook, clean and work in the garden of her home which she maintained alone. She had cared for Faith on several occasions, and Mrs. Leslie was of the opinion that the child was well cared for at those times.

Stanley Surma, Delores Luchene, and David Nolan all testified they became acquainted with the respondent in 1973 at a methadone maintenance center where she was employed as a counselor. Stanley Surma and his friend, Tina Ende, testified they cared for Faith from time to time during June through August or September of 1973 for which they received some payment from the respondent. Delores Luchene and David Nolan testified they cared for Faith at their apartment continuously for about a month around October of 1973. They received payment from both the respondent and from the respondent's mother.

In 1971, Faith Stilley was admitted to Wesley Memorial Hospital with burns on her feet. The evidence showed that after Rochelle Stilley had ceased living with Augustus Scott, she left the child with a baby sitter for an evening. Upon returning she discovered that the child had burns on both feet and Mr. Scott was with her. At that time the child was placed in a foster home and subsequently returned to the mother.

The respondent testified she had been in the Tinley Park Mental Health Center for five days in September of 1973 and for five days in November of 1973 when she was detoxifying from methadone.

Delores Luchene testified that in October of 1973, the respondent admitted she had just used cocaine for the first time, and Stan Surma testified that in March of April of 1973, the respondent called him and asked him to come over to her apartment and "help her with a little bag of heroin." He stated he saw her heat some brown powder in a spoon and inject it in her arm, after which she acted like a person feeling the effects of heroin.

Delores Luchene also testified that in October of 1973, the respondent told her she would earn some money from a "trick" to pay babysitting costs. She further stated the respondent called her from a bar near midnight and asked her to come and get her daughter because she had a guy on the line and there was a lot of money at stake.

Rochelle Stilley testified she had used no drug since October 24, 1973,

and that she had used only methadone for two years prior to that date. She denied taking an injection of heroin in the presence of Stan Surma and denied ever having taken cocaine. She also denied engaging in prostitution in the period in question, but had in conversation with several people referred to her past life in which she had been a prostitute.

Two months prior to trial Faith was referred to Mary Leiment, a clinical psychologist. She testified she evaluated Faith on February 7, 1974, at which time Faith had been in two or three foster homes for a period of approximately three months. She testified Faith was of bright average intelligence, very anxious and infantile. She arrived at a conclusion of "inadequate parenting." She further testified that a high percentage of children do not adjust to foster care, and that placement in a foster home always has a disruptive effect on the child. She also stated Faith had indicated a preference to be with her mother.

The court made a finding of unfitness pursuant to section 5—7 of the Juvenile Court Act and placed Faith in State guardianship, with instructions that the guardian not place the minor with either parent without court approval.

On oral argument both sides discussed the present custody of Faith with her father in Arizona. This court was surprised to learn of that development and questioned the attorneys regarding the trial court jurisdiction to grant a change in custody when the cause was on appeal. They had no explanation, neither could they explain how the father now appears and makes claim for the child, when he did not support the child after he and the mother separated.

The respondent contends the State failed to prove by a preponderance of the evidence that Faith Stilley was neglected pursuant to section 2—4(1) (a)). That section provides in part:

"(1) Those who are neglected include any minor under 18 years of age

(a) who is neglected as to proper or necessary support, education as required by law, or as to medical or other remedial care recognized under State law or other care necessary for his well-being, or who is abandoned by his parents, guardian or custodian
* * * ."

Section 1—2 of the Act (Ill. Rev. Stat. 1973, ch. 37, §701—2) is also relevant to this proceeding, and it provides in part:

"(1) The purpose of this Act is * * * to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal * * *.

* * *

(3)c) The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child."

■■ In the case of *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624, the Supreme Court of Illinois noted there are no specific guidelines to determine what constitutes sufficient evidence of neglect:

"Neglect, however, is the failure to exercise the care that the circumstances justly demand. It embraces wilful as well as unintentional disregard of duty. It is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances change."

■■ Courts have also held the natural parent has the superior right to the custody of the child, but such right must always yield to the welfare and best interest of the child. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556; *Petition of Breger v. Seymour* (1966), 74 Ill. App. 2d 197; *People ex rel. Pace v. Wood* (1964), 50 Ill. App. 2d 63.

After reviewing the record in this case we conclude the State failed to prove by a preponderance of the evidence the child was neglected or the best interests of the child would be served by removing her from the custody of her mother.

■■ The evidence adduced at trial shows the respondent to have been a troubled woman who appears to have made progress toward overcoming her problems. However, whatever the problems are or were, there was insufficient evidence adduced to show the child was neglected.

There was evidence of one case in which Faith slipped away from her great-grandmother, but there was no proof this was anything more than an isolated incident. There was evidence the child suffered burns on her feet in 1971, but there was no proof her mother had anything to do with it. There was evidence the respondent left her child with friends while working as a counselor at a methadone maintenance center and while detoxifying from methadone, but there was no evidence the child received inadequate care in these circumstances, and in each situation those caring for Faith stated they received money either from the respondent or her mother.

The State characterized the respondent as being mentally ill because on two occasions she was admitted to the Tinley Park Mental Health Center as a voluntary patient, yet they presented no psychiatric testimony or showed these visits were anything other than the result of withdrawing from methadone as stated by the respondent.

The State also presented evidence the respondent had on two occasions used illegal drugs and had engaged in acts of prostitution. These accusa-

tions were denied by the respondent, but even if they were true, we do not believe such acts would be sufficient to constitute neglect under the statute.

Finally, the State presented testimony from a clinical psychologist that the child had received inadequate parenting. However, Faith was not interviewed until she had been in two or three foster homes for a period of some three months. The psychologist stated she sees a high percentage of children who are not adjusting to foster care and has known many children to present behavioral problems so they will be returned home. In fact, Faith indicated a desire to be with her mother.

We note the language of Mr. Justice Klingbiel's concurring opinion in the case of *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 568, in which he stated:

> "There is hardly any infant who could not be said to benefit, in some respects at least, by removal to someone ideally suited for parenthood. * * * Viewed in isolation, the welfare of almost any child could be promoted by taking it from careless, irresponsible or overly protective parents and giving it to some one more qualified to care for and guide it and to supervise its growth and development. * * * It is only when [parents] are unable or unwilling to give it the care, affection and support it should receive that a court may remove it to a more suitable environment."

For these reasons, the judgment of the Circuit Court of Cook County is reversed, and we order that Faith Stilley be returned to her mother.

Reversed.

ADESKO, J., concurs.

Mr. PRESIDING JUSTICE JOHNSON, dissenting:

I respectfully dissent from the opinion of the majority and would affirm the decision of the trial court.

It is not the function of a reviewing court to substitute its judgment for that of the trial court. Instead, our role is to review the findings of fact of the trial judge and determine whether the facts thus found justify the entry of the order. (*In re Dependency of Bartha* (1967), 87 Ill. App. 2d 263, 268, 230 N.E.2d 886.) Only where the trial court's findings are palpably erroneous and contrary to the manifest weight of the evidence should the order be disturbed on appeal. *Winslow v. Lewis* (1957), 15 Ill. App. 2d 65, 76, 144 N.E.2d 782.

The testimony adduced at the hearing indicated that appellant had committed acts of prostitution on several occasions; had frequently placed her child in the care of friends for long periods of time; was an

addict; had used heroin while ostensibly detoxifying on methadone; and was having mental problems which caused her to admit herself or be admitted by her mother to a mental health facility on two occasions. At one time, the minor was taken from appellant's custody (and appellant was arrested) when cigarette burns were found on the soles of her feet. Prior to being removed from the custody of her mother in October 1973, she had been found wandering in the streets late at night, after being placed in the care of her great-grandmother who was 86 years old. In addition, a clinicial psychologist testified that the child showed signs of disturbance, was very insecure and suffering from inadequate parenting.

While it is true that appellant denied much of the testimony provided by the friends to whom she had often entrusted her child, it is clear that the trial court chose not to believe the appellant. Where truth lies, in any debatable set of circumstances, is a matter peculiarly for the trier of fact. (*People v. Williams* (1966), 75 Ill. App. 2d 50, 59, 221 N.E.2d 48.) The trial court, having heard and observed the witnesses, was in a superior position to judge their credibility and weigh the evidence. (*In the Interest of Garmon* (1972), 4 Ill. App. 3d 391, 395, 280 N.E.2d 19.) This is particularly significant where the court must determine whether a minor has been neglected.

The State may only interfere with the parental right to custody when that right has been forfeited by the parents, either through their misconduct, or their inability to provide proper care for their children. (*Petition of Breger v. Seymour* (1966), 74 Ill. App. 2d 197, 219 N.E.2d 265.) The experienced trial judge here carefully considered the matter and found that the child was neglected. This court should not substitute its judgment where, as here, the decision is not contrary to the weight of the evidence. I would affirm the order.