*In re* LAMONT MARTIN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* VIRGIE MARTIN, Respondent-Appellant.)

First District (5th Division)    No. 76-69

Opinion filed April 22, 1977.

James J. Doherty, Public Defender, of Chicago (Frances Sowa and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Roger Horwitz, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by respondent from an order of the juvenile court of Cook County finding her unfit to have custody of her son, Lamont Martin, and appointing a guardian with the right to consent to his adoption.

Three issues are presented for our review: (1) whether the State proved by clear and convincing evidence that she failed to maintain a reasonable degree of interest, concern, and responsibility in her child; (2) whether the court committed prejudicial error when, prior to a determination of fitness, it allowed the caseworker to testify that an adoptive home was

available for the child; and (3) whether the court had jurisdiction to appoint a guardian to consent to adoption where respondent's child was never adjudicated a ward of the court.

Respondent was 16 years of age when Lamont was born, in February of 1972. In August of 1972 she appeared before the juvenile court pursuant to a petition for adjudication of wardship which alleged that Lamont was without the proper care necessary to maintain his well-being, in violation of section 2—4(1)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—4(1)(a)). At the hearing, her attorney informed the court that she was unable to care for Lamont and that she would agree to a finding of neglect because of her age and because she was also a ward of the court. That finding was entered, and in September of 1972 Lamont was placed in the foster home of Mrs. Beatrice Rae.

Thereafter, in March of 1975, the State filed a petition for supplemental relief, alleging that the parents of Lamont Martin were unfit because they failed to maintain a reasonable degree of interest, concern, and responsibility as to the child's welfare, in violation of section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—9). The petition also asked for the appointment of a guardian with the right to consent to adoption. Lamont's father was defaulted by publication, but respondent—his mother, appeared and contested the allegation of unfitness insofar as it applied to her.

At trial, Judy Reiner, a social worker with the Department of Children and Family Services, testified for the State that she was assigned to the case of Lamont Martin in July of 1974. Respondent came to her office on July 11, 1974, and she informed respondent that if she wanted to have Lamont returned to her it was important that she have a job, a place to live, and that she maintain steady contact with him. At the next scheduled meeting, respondent reported that she had no place to live, no means of support, and had not visited her child. Another meeting was scheduled on September 12, 1974, but respondent did not keep the date. Reiner testified further that respondent had not contributed to the support of Lamont nor had she telephoned or visited him since July of 1974.

Mrs. Rae testified for the State that Lamont was placed in her home in September of 1972 and that respondent visited him four times in 1974— once in February when she took him for three days, once in March for a weekend, once near Easter, and once in July on a Sunday. After the latter date, respondent did not see or telephone the child nor did she contribute to his support. On cross-examination, Mrs. Rae said that she did not discourage respondent from visiting Lamont and that she never had contact with the father.

Respondent testified that after some difficulty she finally located the foster home of Lamont late in 1972, and that she visited him from that

time until September of 1974. She gave him presents, clothes and money and helped feed him during the visits. She did not see or contact him after September of 1974, because she was having difficulty in receiving her public assistance checks and because she had no place to stay. She did not contact Miss Reiner because of a fire in the apartment of the lady with whom she was staying, in which she lost her belongings. She testified also that she made no attempt to visit Lamont after September of 1974, because Mrs. Rae said she was not allowed to see him anymore. Later, when she attempted to call Mrs. Rae, she was told that the telephone had been disconnected. At the time of trial, respondent was pregnant but said she had a place to stay and that she was engaged to be married.

The court entered a finding of unfitness and determined it was in the best interest of Lamont that a guardian be appointed the right to consent to his adoption.

OPINION

It is first contended that the State did not prove by clear and convincing evidence that respondent failed to maintain a reasonable degree of interest, concern, and responsibility in her child. We disagree.

■■ The rights of natural parents to their children cannot be severed unless a clear and convincing case is presented to the trial court. (*In re Moriarity* (1973), 14 Ill. App. 3d 553, 302 N.E.2d 491.) In such cases, that court is in the best position to judge the demeanor and credibility of the witnesses (*In re Garmon* (1972), 4 Ill. App. 3d 391, 280 N.E.2d 19), and this is a vital factor in evaluating the correctness of the court's determination, which should not be disturbed unless it is against the manifest weight of the evidence (*In re Gonzales* (1974), 25 Ill. App. 3d 136, 323 N.E.2d 42; *Campbell v. Fisher* (1961), 28 Ill. App. 2d 454, 171 N.E.2d 810). In addition, cases of the type before us which concern the welfare of the child, are *sui generis* and must be decided in accordance with the particular facts of each situation. *In re Grant* (1975), 29 Ill. App. 3d 731, 331 N.E.2d 219.

Here, it was respondent's testimony that after Lamont had been placed in the foster home, she had difficulty in locating him and finally found him late in 1972. Mrs. Rae, in whose home Lamont had been placed in February of 1972, testified that respondent had visited him only four times between February 1974 and July 1974, and made no visits prior to or after that period of time. Respondent testified that she visited Lamont from the time she located him in late 1972 until February of 1974, but she made no statement as to the number or the approximate dates of these visits. Thus, it is our belief that the record does not establish the regular visitation testified to by respondent. Nor does it appear that she was faced with overwhelming problems that would excuse her failure to visit

Lamont after September of 1974. It was her testimony that she did not visit after that time because of difficulty in receiving her public assistance checks. She did not say, however, that they were not received, and there is nothing in the record to indicate why the mere delay in receiving them prevented her from visiting Lamont. Moreover, difficulty of this type will not excuse her lack of interest. (*Grant.*) Neither does she state how the fire which allegedly destroyed the apartment in which she was staying deterred her from visiting or contacting Lamont after September of 1974. Nor did she state how the destruction of her belongings in the fire prevented her from contacting the caseworker. We note also that there was no indication of an obstructionist attitude on the part of the caseworker, as there was in *In re Overton* (1974), 21 Ill. App. 3d 1014, 316 N.E.2d 201, or any testimony concerning transportation difficulties preventing her visitation, as was the case in *In re Gibson* (1975), 24 Ill. App. 3d 981, 322 N.E.2d 223.

■■■ Respondent here was found to be unfit by reason of her failure to maintain a reasonable degree of interest in Lamont's welfare. (Ill. Rev. Stat. 1973, ch. 4, par. 9—1—1D(b).) We agree with respondent that evidence of the failure of a parent to visit or communicate with a child is not clear and convincing proof of unfitness where the parent offers a reasonable explanation for her failure. (*Gibson; Overton; In re Deerwester* (1971), 131 Ill. App. 2d 952, 267 N.E.2d 505.) However, in the light of the circumstances outlined above, we do not agree with respondent here that she offered a reasonable explanation. In fact, it appears that she made no serious effort to visit or contact Lamont or the caseworker during the 10 months prior to the filing of the petition for supplemental relief. On this record, we cannot say that the finding of unfitness was against the manifest weight of the evidence.

Respondent next maintains that prejudicial error was committed when the trial court, prior to a determination of fitness, allowed the caseworker to testify that an adoptive home was available for the child. Again, we disagree.

This information was brought out in a question on the direct examination of the caseworker. A general objection was made, and the State then argued that it was relevant in the best interests of the child "if the court terminates the mother." The court did not make the inquiry, and we see nothing in the record to indicate that the information influenced the court's finding of unfitness. Nor do we find anything which rebuts the presumption that the court considered only competent evidence in reaching its decision. *People v. Garner* (1972), 6 Ill. App. 3d 1, 284 N.E.2d 440.

■■ Moreover, we believe the information is relevant. The Juvenile Court Act is to be liberally construed (Ill. Rev. Stat. 1973, ch. 37, par.

701—2(4)), and it provides that both trial and reviewing courts are required to consider the best interests of the minor in proceedings that involve the issue of terminating the rights of a natural parent. (Ill. Rev. Stat. 1973, ch. 37, par. 701—2(3)(c); *Grant.*) While it is true that the trial court should first determine the unfitness of a mother (*In re Shuman* (1974), 22 Ill. App. 3d 151, 319 N.E.2d 287), the best interests of the child are also relevant. For the reasons stated, we see no prejudicial error in allowing the caseworker to testify that an adoptive home was available.

Lastly, respondent argues that Lamont had not been adjudicated a ward of the court and, as a consequence, the court was without jurisdiction to appoint a guardian to consent to adoption. Relying on *In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517, and *In re Jennings* (1975), 32 Ill. App. 3d 857, 336 N.E.2d 786, she argues that such an adjudication is a jurisdictional prerequisite to further action by the court. In *Jennings*, the record failed to show an adjudication of wardship, and it was held that the trial court had no power to enter a dispositional order. In *Barr*, the trial court's dispositional order provided "all statutory prerequisites had been complied with." It was held that this statement was not sufficient to demonstrate an adjudication of wardship, and the matter was remanded to determine whether such a finding had been made. The quoted phrase has appeared recently in a number of other cases: *In re Horton* (1977), 45 Ill. App. 3d 264, 360 N.E.2d 394; *In re Davis* (1976), 44 Ill. App. 3d 970, 358 N.E.2d 1233; *In re Duffy* (1976), 44 Ill. App. 3d 799, 358 N.E.2d 1170; *In re Cajigas* (1976), 39 Ill. App. 3d 600, 351 N.E.2d 610; *In re Ross* (1976), 37 Ill. App. 3d 827, 347 N.E.2d 457. In each of these cases, it was held that an explicit adjudication of wardship must be made before the court enters a dispositional order regarding the minor.

■■ In the instant case, the record discloses that a petition for adjudication of wardship was filed and was set for hearing on August 25, 1972. The dispositional order of June 10, 1975, provides that Lamont "was on August 25, 1972, found to be a neglected minor and adjudged a ward of the court as alleged in the petition herein." Thus, the dispositional order here differs from that in *Barr* and the other cases cited above and, because it states that Lamont was adjudged a ward of the court, we believe it would ordinarily satisfy the explicit finding requirement of *Barr*. We note, however, that the transcript of the August 25, 1972, proceeding contains no such finding by the court nor do the half-sheet notations indicate any such adjudication. In the light thereof and in view of cases cited which hold an explicit finding is necessary, we believe that this matter, as in *Barr* and *Duffy*, should be remanded with directions to determine whether an adjudication of wardship had in fact been made and, if so, the dispositional order will stand. If it is determined no adjudication was made, the trial court shall decide whether such a finding is in order and, if

made, the dispositional order will stand. If it is found that the minor should not be adjudged a ward, the petition for supplemental relief shall be dismissed.

■■ Parenthetically, although we will follow the rule expressed in *Barr* and the other cases cited because the record does not support the reference in the dispositional order that wardship was adjudged, we express some doubt as to whether the failure to explicitly adjudicate wardship amounts to jurisdictional error in all circumstances. We agree with the general proposition that where a special statutory jurisdiction is exercised, the record must show the authority of the court to act. (*Zook v. Spannaus* (1966), 34 Ill. 2d 612, 217 N.E.2d 789; *In re Bartha* (1967), 87 Ill. App. 2d 263, 230 N.E.2d 886.) However, the legislature specifically defines in the Juvenile Court Act certain facts to be jurisdictional, but wardship is not among them (Ill. Rev. Stat. 1973, ch. 37, par. 702—1), and it has provided that the Act must be liberally construed to carry out its purpose and policy (Ill. Rev. Stat. 1973, ch. 37, par. 701—2(4)). Further, it is a general rule that in a special statutory action only a material departure from the mode provided by law will be fatal to the proceeding. (*Chicago & Northwestern Ry. Co. v. Galt* (1890), 133 Ill. 657, 23 N.E. 425. See also *People v. Abney* (1967), 90 Ill. App. 2d 235, 232 N.E.2d 784.) Since wardship had not been delineated a jurisdictional fact by the legislature and, because the Act must be liberally construed, it appears that there have been and will be circumstances where the lack of an explicit adjudication would not be a material departure fatal to the proceeding. We believe that such a situation would exist here if the reference in the dispositional order had some corroboration in the record.

However, as we have stated, this case will be remanded with directions as set forth above in this opinion.

Remanded with directions.

LORENZ and WILSON, JJ., concur.